[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11838
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-80138-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROSEMARY SCHIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Rosemary Schier appeals her convictions, entered after a bench trial, for knowing possession of a concealed dangerous weapon (an icepick) on an airplane, in violation of 49 U.S.C. § 46505(b)(1) (Count 1), and knowingly entering an

aircraft with a concealed weapon contrary to security requirements, in violation of 49 U.S.C. § 46314(a), (b)(1) (Count 2). On appeal, Schier argues that: (1) the district court violated the Speedy Trial Act, 18 U.S.C. §§ 3152-56, 3161-74, by commencing her trial within 30 days of the superseding indictment; (2) the evidence was insufficient to support her convictions; and (3) the government failed to meet its disclosure obligations under the Jencks Act, 18 U.S.C. § 3500.[1] After

---

[1]Schier also argues the district court erred by failing to suppress certain statements she made when she was detained at the West Palm Beach airport. Notably, Schier did not move to suppress this evidence before, during, or after trial, nor did she so much as suggest, prior to this appeal, that her statements were involuntary or in violation of Miranda v. Arizona, 384 U.S. 436 (1966). At this late stage, she now asserts that the district court, essentially, should have acted sua sponte to suppress the statements because the government did not present affirmative evidence that she was read her Miranda rights. We are unpersuaded. In his factual findings, the district judge found that Deputy Robert Tennant, of the Palm Beach County Sheriff's Office, read Schier her Miranda rights when she was taken into custody and that she understood and waived her rights, and that her statements were free and voluntary. Based on our review of the record, the district court did not plainly err by making these findings. Cf. United States v. Glen-Archila, 677 F.2d 809, 814 n.14 (11th Cir. 1982) (reviewing unpreserved claim of Miranda violation for plain error).

We likewise find no merit in Schier's argument, again raised for the first time on appeal, that the district court erred by failing to find a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). As she does in her argument based on Miranda, Schier asserts that the district court, essentially, should have acted in a sua sponte fashion to find a violation of Brady, without so much as an objection from Schier, or even a request for the materials to which she now claims she was entitled. In order to establish a Brady violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002). Schier's Brady argument focuses on certain law enforcement notes or reports. As to Special Agent Moffatt, we can find no plain error based on Brady because there is no evidence in the record that Moffatt produced any notes or reports or that Schier requested any such notes or reports before, during, or after trial. As to Special Agent Gardner, Schier's trial counsel never unambiguously requested Gardner's notes. During Gardner's cross examination, he stated that he took notes during his interview with Schier but had not obtained a signed statement. Schier's counsel requested to see the notes, but Gardner indicated that he did not have the notes in court to which defense counsel

2

thorough review of the record and careful consideration of the parties' briefs, we affirm.

I.

We review a claim under the Speedy Trial Act de novo. United States v. Williams, 314 F.3d 552, 556 (11th Cir. 2002). We normally review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict. United States v. Byrd, 403 F.3d 1278, 1288 (11th Cir.), cert. denied, --- U.S. ----, 126 S. Ct. 243 (2005). However, because Schier moved for a judgment of acquittal at the close of the government's case but failed to renew her motion at the close of all of the evidence, we will affirm her conviction, against her challenge to the sufficiency of the evidence, "unless there is a manifest miscarriage of justice -- [in other words,] if the evidence on a key element of the offense is so tenuous that a conviction would be shocking." United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998) (quotations omitted).

responded "[a]ll right" before continuing his cross examination. In any event, even if counsel's question about the notes could be construed as a Brady request, which we do not find, our own review of the record reveals no indication that the government actively suppressed these materials or, for that matter, that they were exculpatory or even useful for impeachment purposes. Quite simply, we can find no plain error based on Brady. Cf. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (reviewing unpreserved Brady claim for plain error).

We review a district court's Jencks Act findings for clear error. See United States v. Delgado, 56 F.3d 1357, 1363 (11th Cir. 1995). We review a district court's enforcement of Jencks disclosure requirements for abuse of discretion. See United States v. Valera, 845 F.2d 923, 927 (11th Cir. 1988); see also United States v. Lepiscopo, 429 F.2d 258, 259-60 (5th Cir. 1970) (finding no abuse of discretion in district court's requirement that defendant request, receive, and examine Jencks materials in the presence of the jury).[2] However, because Schier did not object under the Jencks Act in the district court, we review that issue only for plain error. See United States v. Anderson, 471 F.2d 201, 203-04 (5th Cir. 1973). To demonstrate plain error, the defendant must show there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (internal quotations and citations omitted).

The parties are familiar with the relevant facts and we summarize only those necessary to our analysis here. On November 18, 2004, by a second superseding

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all Fifth Circuit decisions rendered prior to October 1, 1981.

indictment, Schier was charged with one count of knowingly having a concealed dangerous weapon (an icepick) in her possession on an aircraft in air transportation, which weapon was accessible to Schier during flight, in violation of 49 U.S.C. § 46505(b)(1) (Count 1), and one count of knowingly entering an aircraft with a concealed weapon in her possession, contrary to security requirements, in violation of 49 U.S.C. § 46314(a), (b)(1) (Count 2). Schier pled not guilty, waived her right to a jury trial, and proceeded to trial before the district court.

The instant charges arose out of Schier's possession of an icepick when she boarded a US Airways flight from Philadelphia to West Palm Beach. At trial, during initial questioning, Schier testified that she sells collectibles and antiques on the internet. Prior to trial, the parties stipulated to the following facts: (1) on April 14, 2004, Schier carried an icepick in her handbag into a secure area in the Philadelphia airport; (2) Schier knowingly and willfully boarded an aircraft in operation in air transportation; and (3) an icepick is an inherently dangerous weapon.

During its case-in-chief, the government presented the following testimony. Hindowah Kombe-Kajue, a Supervisory Screener at the Philadelphia airport, testified that, on April 14, 2004, the concourses at the Philadelphia airport had

5

signs unambiguously posted that instructed that "sharp objects" were prohibited on the airplane.

Two fellow passengers on Schier's flight, both of whom were sitting near Schier on the plane, testified for the government. Evelyn Ann Witters, who was seated across the aisle from Schier, observed that Schier was upset because she had to sit next to a young mother on the plane and became hostile towards a flight attendant. Witters subsequently noticed Schier pulling her sleeve over what Witters thought was a knitting needle. Based on this observation, Witters wrote a note to the flight attendant saying that "[t]he agitated lady in 20-D has a sharp ? tool slid up her right sleeve." As the flight attendants were discussing the situation, Witters saw Schier move the object from her sleeve and place it in the top of a handbag that was on her lap. Witters also reported this conduct to the flight attendant.

Robert McMenamin was sitting next to Schier and, like Witters, noticed that Schier became upset about her seat because she wanted to sit next to her husband. McMenamin initially noticed that Schier was concealing an object in her sleeve and subsequently reported to a flight attendant that Schier had an icepick and had placed it in her purse.

Margaret Panchelli, the head flight attendant on Schier's flight, testified that Schier first complained about sitting next to a mother. Panchelli said that another flight attendant informed her about Witters's note at which point Panchelli approached Schier. Panchelli was able to see the icepick in plain sight, as it was in the top of Schier's purse. Panchelli then reached for and took the icepick out of Schier's purse, at which point Schier said that she was going to call the police because Panchelli could not touch her property. Passenger McMenamin testified that Schier acted as if she was surprised when Panchelli found the icepick and as if she had no idea how it got in her purse.

Panchelli told the captain about the icepick; the captain asked whether he needed to divert the plane. Panchelli said no, and the pilot then instructed her to put the icepick and note in the oven on the plane. Panchelli spoke with Schier's husband and moved other people so that the two could sit together. After the plane landed in West Palm Beach, Pachelli gave the note and icepick to a police officer who was waiting for the plane.

Daryl Hamilton Brownell, an employee of the Transportation Security Administration ("TSA") in West Palm Beach, was present when Schier was removed from the plane by West Palm Beach law enforcement and remained for about a half hour of Schier's interview. During cross examination, Brownell

indicated that he had filed a written agency report on the incident. When Schier's counsel asked to see the report, the prosecutor stated that she already had provided it to counsel, pursuant to the Jencks Act. Schier's counsel responded "Judge, Jencks has just been provided to me." The district court then provided counsel with some time to review the report, after which counsel continued his cross-examination of Brownell.

The government also presented testimony from FBI Special Agent Theodore Gardner, who interviewed Schier in West Palm Beach after the local Sheriff's Office had completed its interview of her. Gardner testified that Schier stated the following during her interview: (1) she remembered seeing the icepick on her kitchen table the evening before the flight, and it must have fallen into her purse; (2) her purse was searched the next day at the airport, and a pair of nail clippers was removed; (3) she was having breakfast with her husband at a restaurant in the airport and discovered the icepick; (4) she decided to leave it in her purse because it was a collector's item, and she collects antiques; (5) she had discussions with the flight attendants because she wanted to be seated near her husband; (6) she got nervous, after the plane departed, because she had the icepick in her bag and tried to put it up her sleeve; (7) she subsequently took the icepick out of her sleeve and

put it back in her purse before the flight attendant seized it; and (8) she suffered from post-traumatic stress disorder.

At the close of the government's evidence, Schier's counsel moved for a judgment of acquittal, arguing that the government had not shown that Schier intentionally carried the icepick onto the plane. The court denied the motion, crediting Special Agent Garner's testimony that Schier said she discovered the icepick during breakfast, prior to boarding the plane.

In support of her own defense, Schier testified that she did not know that she had an icepick in her purse until she was already on the plane and she discovered it while looking through her purse. She claimed that she used the icepick to open medication bottles. On cross-examination, she admitted talking to Special Agent Gardner about having breakfast before boarding the plane, but denied that she told him she discovered the icepick then.

After the defense rested, the government recalled Gardner, who testified that he had consulted his written report and confirmed that Schier told him she found the icepick while having breakfast in the airport. Although not noted in his report, Gardner recalled Schier telling him that she chose not to "get rid of" the icepick once she discovered it because it was a collector's item.

Based on the foregoing testimony and evidence, the district court made the following findings of fact: (1) the screening area of the airport had signs posted that explained that sharp objects were prohibited on the plane; (2) Schier scooped the icepick into her purse while rushing to pack the previous night; (3) Tennant read Schier her Miranda rights after she was taken into custody, and she understood those rights and waived them; (4) Schier's statements while in custody were, thus, free and voluntary; (5) Gardner's testimony regarding Schier's explanations and the sequence of events was credible and worthy of belief; (6) Gardner's testimony that Schier first discovered the icepick in the airport restaurant prior to boarding the plane was credible; (7) Schier made a conscious decision to board the plane with the icepick instead of discarding it; (8) Schier boarded the plane knowing that she possessed an icepick and that it was a prohibited item; (9) Schier had a confrontation on the plane with a flight attendant regarding seating; (10) Schier removed the icepick from her bag and attempted to conceal it in her sleeve; (11) two other passengers notified flight attendants, who seized the icepick; and (12) the icepick constitutes a dangerous weapon within the meaning of the statutes.

The district court concluded, as a matter of law with respect to Count 1, that the government had proven beyond a reasonable doubt that Schier boarded an

aircraft involved in air transportation with a concealed, accessible weapon on her person. As for Count 2, the court found that the government proved beyond a reasonable doubt that Schier knowingly and willfully entered the aircraft with a concealed weapon contrary to screening requirements. Accordingly, the court found Schier guilty as charged. At sentencing, the district court imposed a sentence of "time served," followed by two years' supervised release, of which six months was to be spent in home detention, and a fine of $10,000. This appeal followed.

## II.

First, Schier asserts a violation of the Speedy Trial Act because her trial began within 30 days of the issuance of the second superseding indictment. In making this claim, Schier concedes that her trial counsel did not ask for a continuance, but argues nevertheless that the second superseding indictment charged a new offense and restarted the clock for the 30-day period. We disagree. The Speedy Trial Act provides, inter alia:

> (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment . . .

> (2) Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant

11

first appears through counsel or expressly waives counsel and elects to proceed pro se.

18 U.S.C. § 3161(c) (emphasis added).

In United States v. Rojas-Contreras, 474 U.S. 231 (1985), the Supreme Court addressed the instant issue, considering whether the Speedy Trial Act prohibits commencement of a trial less than 30 days after arraignment on a superseding indictment. The Court first noted that § 3161(c)(2) fixed the beginning point for the trial preparation period as the first appearance through counsel and did not refer to the date of the indictment or a superseding indictment. Id. at 234. Accordingly, the Court concluded, "Congress did not intend that the 30-day trial preparation period begin to run from the date of filing of a superseding indictment." Id.

Moreover, as the Supreme Court noted, § 3161(c)(1) specifies the date of indictment as the beginning point of the 70-day period for commencement of trial and, had Congress intended for the 30-day trial preparation period to commence or recommence with the filing of an indictment, it would have so specified. Id. at 235. As we have noted, "[t]he mandatory 30-day trial preparation period provided by the Speedy Trial Act is not automatically restarted upon the filing of a superseding indictment. Instead, trial courts have broad discretion to grant

continuances when necessary for additional preparation." United States v. Brantley, 68 F.3d 1283, 1288 (11th Cir. 1995) (citation omitted).

Here, the district court complied with both § 3161(c)(1) and (c)(2). The information was filed on October 13, 2004 and, 61 days later, the trial commenced on December 13, 2004, which was within the 70-day period required by § 3161(c)(1). Schier appeared initially with counsel before a magistrate judge on June 28, 2004, which was more than 30 days before the trial began, thus also satisfying the requirements of § 3161(c)(2). See Rojas-Contreras, 474 U.S. at 236; Brantley, 68 F.3d at 1288. Simply put, we can find no error based on the Speedy Trial Act.

We likewise are unpersuaded by Schier's various challenges to the sufficiency of the evidence to support her conviction on Count 1.[3] Under 49

_____

[3]Schier also suggests the government's evidence was deficient on Count 2 because it did not establish that the Philadelphia airport security screening was conducted under the supervision of a federal employee of the TSA. The statute under which Schier was convicted provides: "[a] person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title, an aircraft or an airport area that serves an air carrier or foreign air carrier." 49 U.S.C. § 46314(a). The Under Secretary of Transportation for Security is required to provide for the screening of all persons and property prior to boarding an aircraft, 49 U.S.C. § 44901(a), and to prescribe regulations to protect passengers on an aircraft from acts of criminal violence, 49 U.S.C. § 44903(b). According to the terms of the statute, to sustain a conviction under § 46314(a), the government must prove two things: (1) that a defendant knowingly and willfully entered an aircraft or an airport area that serves an air carrier or foreign air carrier, and (2) such entry violated prescribed security requirements. See 49 U.S.C. § 46314(a). As to the first element, prior to trial, Schier stipulated that she knowingly and willfully boarded an aircraft in operation in air transportation. As to the second element, the government presented the testimony of a Supervisory Screener at the Philadelphia airport. He testified that on April 14, 2004, the date of Schier's flight, all concourses at the airport had signs prominently posted instructing that "sharp

13

U.S.C. § 46505(b)(1), "[a]n individual shall be fined under title 18, imprisoned for not more than 10 years, or both, if the individual . . . when on, or attempting to get on, an aircraft in, or intended for operation in, air transportation or intrastate air transportation, has on or about the individual or the property of the individual a concealed dangerous weapon that is or would be accessible to the individual in flight." 49 U.S.C. § 46505(b)(1). Thus, to sustain a conviction under this section, the government must prove three things: (1) the defendant boarded, or attempted to board, an aircraft in, or intended for air transportation; (2) the defendant had on her person a concealed dangerous weapon; and (3) the dangerous weapon was or would be accessible to the defendant during flight. See id.

When coupled with Schier's pretrial concessions -- (1) she knowingly and willfully boarded an aircraft in operation in air transportation; (2) she carried an icepick into a secure area of the airport; and (3) an icepick is an inherently dangerous weapon -- the government presented ample evidence to support Schier's conviction. To the extent Schier asserts the government's evidence failed to establish that she acted willfully or knowingly, as the evidence did not show she had access to the icepick while on the plane, we observe that during her own testimony, Schier stated that she tried to hide the icepick while on the plane.

objects" were prohibited from the airplanes. In short, the evidence was sufficient to convict Schier of violating § 46314(a), as charged in the indictment.

14

Moreover, two fellow passengers testified that they saw Schier hide the icepick in her sleeve and then move it into her purse.[4] On this record, we cannot conclude that Schier's conviction resulted in "a manifest miscarriage of justice" or that "the evidence on a key element of the offense [was] so tenuous that a conviction would be shocking." United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998).

Finally, Schier argues, for the first time on appeal, that the government violated the Jencks Act by failing to produce the reports of Special Agents Gardner and Moffatt and TSA employee Brownell, prior to trial.[5] The Jencks Act provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

---

[4] We reject Schier's challenge to the district court's finding that Special Agent Gardner was credible. Special Agent Gardner testified that Schier told him that she discovered the icepick in her purse prior to boarding the plane, while having breakfast with her husband, and that she decided to leave it in her purse because it was a collector's item. Prior to trial, Schier conceded she was an antiques collector. On this record, we cannot conclude that Gardner's testimony is unbelievable on its face, and thus we will not disturb the district judge's credibility finding on that point. Cf. United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (holding that testimony is incredible as a matter of law when it is "unbelievable on its face" and relates to "facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." (internal quotations and brackets omitted)).

[5] Although counsel indicated, during Brownell's cross-examination, that "Jencks has just been provided to me," at no point did counsel object to his receipt of Brownell's report, based either on the Jencks Act or on any other ground.

18 U.S.C. § 3500(b) (emphasis added).

Plainly, the Jencks Act does not apply to the statements of non-testifying witnesses. United States v. Williams, 875 F.2d 846, 854 (11th Cir. 1989); United States v. Pepe, 747 F.2d 632, 657 n.37 (11th Cir. 1984). Rather, "[t]he Jencks Act applies to any witness statement in the United States's possession that relates to the subject matter of the witness's direct testimony." United States v. Delgado, 56 F.3d 1357, 1364 (11th Cir. 1995); see also 18 U.S.C. § 3500. Accordingly, it is clear that Special Agent Moffatt's notes are not covered by the Jencks Act because Moffatt did not testify at the trial.

As for Special Agent Gardner's and Brownell's notes, Schier's counsel did not comply with the requirements of the statute because he never moved or requested the district court for production of the notes. See 18 U.S.C. § 3500(b). "The general rule [for Jencks Act materials] is that a defendant is required to request disclosure following the witness's direct testimony." United States v. Knapp, 25 F.3d 451, 461 (7th Cir. 1994) (citing United States v. Mack, 892 F.2d 134, 137 (1st Cir. 1989); United States v. Petito, 671 F.2d 68, 73-74 (2d Cir. 1982); United States v. Lyman, 592 F.2d 496, 498-99 (9th Cir. 1979)). Thus, it is only upon the defendant's request that a district court exercises its discretion as to the production of Jencks materials. Cf. Valera, 845 F.2d at 927 (reviewing district

16

court's enforcement of Jencks and <u>Brady</u> disclosure requirements for abuse of discretion); <u>Lepiscopo</u>, 429 F.2d at 259-60 (finding no abuse of discretion in district court's requirement that defendant request, receive, and examine Jencks materials in the presence of the jury).  Based on Schier's failure to make such a request, we find no error, plain or otherwise, based on the Jencks Act.

In sum, we discern no reversible error here and, accordingly, affirm Shier's convictions.

**AFFIRMED.**