[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16348
Non-Argument Calendar

_____

D. C. Docket No. 06-00066-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 15, 2007)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

## I.

David Johnson appeals his convictions and sentences for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). For the reasons that follow, we affirm Johnson's convictions and sentences.

## II.

Johnson and six others were charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine, in violation of 21 U.S.C § 841 (Count 1), and Johnson was charged with two others with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 2). Prior to trial, the government filed a notice of intent to seek enhanced penalties under 21 U.S.C. § 851 based on Johnson's prior controlled substance convictions in September 2004 and January 2006. Johnson objected, asserting that the prior convictions were part of the instant offense.

At trial, the government established the following:

Sharon Dixon operated a drug ring, selling drugs to Johnson, also known as

"Day-Day," his brother Fred, and his cousin, Alonzo. Johnson also involved his girlfriend, a juvenile female named Ashley, and Valentine Vasser in the distribution of drugs. Alonzo Johnson testified that Johnson sold drugs, and he authenticated a video in which Johnson was seen counting money and selling drugs from an area known as "the hole." Alonzo also admitted that Dixon was the main drug supply source for himself and Johnson.

Wiretaps from the investigation recorded calls from Johnson to Dixon and a call from Dixon to an unidentified woman using Johnson's phone. In the background on that call, Johnson could be heard threatening Dixon by racking the slide and firing a gun. The unidentified woman was heard saying, "David, David, don't." These wiretaps led to arrest and search warrants for Johnson and others.

Deputy Blake Weekley with the Santa Rosa County Sheriff's Office searched Johnson's home, finding crack on the kitchen table, plastic bags consistent with drug packaging, baking soda and a spoon with crack residue, and $8,000 cash. Authorities found pictures of Ashley with money and a bag with Johnson's clothes, identification, crack, and digital scale. Johnson later admitted the bag was his. A few days after his arrest, Johnson spoke with authorities and admitted that he, Dixon, Fred, and Vasser were involved in the distribution of crack. While Johnson was in custody, he made frequent calls to Ashley in which

3

the two discussed firearms, selling crack, and cooking crack.

During Weekley's testimony, the government asked, "on the day you served the warrant, was there also a juvenile caucasian female present?" Defense counsel did not object to the characterization. Weekley responded that Johnson's girlfriend Ashley was present. In his testimony, Deputy Sheriff Chris Williams confirmed that a white female named Ashley was present during the search.

Authorities also found a Jaguar registered to the same address Johnson listed as his residence, which was a trailer located at "the hole." The Jaguar matched the car seen in the video Alonzo took. Authorities could not, however, identify who owned the car. Inside the Jaguar, authorities found money, several firearms including a short-barreled shotgun, and drugs. Police also found a gun box under a trailer at "the hole" and a Chevy containing drugs and a firearm. The Chevy belonged to Alonzo, but agents could not determine who used it. The Jaguar was registered to an unidentified female, but Fred used it.

Deputy Scott Haines testified that he had conducted a traffic stop of Fred's car, during which officers found a handgun, money, a ledger, and bank receipts. There also was a note signed by "Day-Day," which referred to jail and Ashley. Officers assumed the note was written by Johnson. At some other point during the investigation, authorities observed Johnson, whom they knew to have an

4

outstanding warrant, sitting alone in a blue Cadillac. A uniformed officer approached the car, and ordered Johnson to exit. A subsequent search of the car uncovered crack cocaine.

After the government rested its case-in-chief, and the court denied Johnson's motion for judgment of acquittal, Johnson presented testimony of his sister, Linda. According to Linda, Johnson did not live at "the hole," but, rather, he lived with Ashley. "The hole" was a plot of land with three mobile homes located on the site, all of which used the same address. Linda also testified that Johnson drove a Cadillac, Fred drove a Jaguar, and Alonzo drove a Chevy. After Linda's testimony, Johnson rested his case.

The government called Tabitha Dixon as a rebuttal witness. Tabitha was Sharon Dixon's girlfriend and knew Johnson through his dealings with Dixon. Tabitha witnessed Johnson buy drugs from Dixon between eight and ten times. Dixon would drive to "the hole," where Johnson and the others would approach the window of the car and purchase drugs from Dixon and Tabitha. Tabitha also knew Ashley, and, after Johnson's arrest, Ashley told Tabitha that Johnson taught her how to cook crack and that she was trying to sell drugs. The government then rested its case, and Johnson renewed his motion for judgment of acquittal, which the court again denied.

The jury convicted Johnson as charged in both Counts One and Two.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 38 for Count 1, with a 2-level enhancement under U.S.S.G. § 3B1.4 because Johnson used a minor to commit the offenses, for a total offense level of 40. Count 2 was not grouped with Count 1 because Count 2 carried a mandatory minimum ten year consecutive sentence, as the firearm involved was a short-barreled shotgun. 18 U.S.C. § 924(c)(1)(B). In determining Johnson's criminal history category, the probation officer listed numerous prior convictions and juvenile adjudications, including the September 2004 conviction for possession with intent to sell a controlled substance, and two January 2006 convictions for possession and possession with intent to sell a controlled substance. As a result of the convictions, Johnson's criminal history category was V. The probation officer also noted that many of the prior convictions involved drugs and weapons. The probation officer further noted that there were pending charges involving drugs and weapons. With a total offense level of 40 and a criminal history V, the guidelines range was 360 months to life imprisonment. 21 U.S.C. § 841, 851; U.S.S.G. § 5G1.1(b). For the firearm conviction, the probation officer noted that Johnson could be heard firing a round into the phone during an intercepted telephone call. Under § 924(c), Johnson faced an enhanced mandatory

6

minimum sentence of ten years imprisonment because the offense involved a short-barreled firearm.

Johnson objected to the PSI, asserting, <u>inter alia</u>, that the convictions used to enhance his sentence were part of the overall conspiracy in the instant case and should not be counted as prior convictions for enhancement purposes. He further challenged the enhancement for the § 924(c) offense because there was no evidence that the firearm was used in furtherance of the instant offense, and he asserted that the type of firearm had not been charged in the indictment.

At sentencing, Johnson reiterated his argument that he should not face enhanced penalties for the type of weapon involved in light of <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738, 160 L.E.2d 621 (2005), because no facts were proven to the jury. The court overruled the objection, but also noted that even if the mandatory minimum was five years instead of ten years, the court could exercise its discretion to impose a ten-year sentence. Johnson then objected to the § 851 enhancement based on prior convictions, asserting that the convictions were sufficiently related to the instant offenses, as they involved the same case, the same planning and execution, and the same local. The government disagreed because the prior convictions were assigned two different case numbers and involved two separate felonies, which occurred at different times and at different locations, one

of which predated the dates of the instant charged conspiracy. The government also noted that there was a third conviction that could be used for the § 851 enhancement. The court concluded that the PSI was accurate and overruled the objection.

The court sentenced Johnson to mandatory life imprisonment on Count 1, and a consecutive 240-month term on Count 2. The court also stated that it had considered the sentencing factors in 18 U.S.C. § 3553(a), that the sentence was mandatory by statute, that the sentence was sufficient, and that "no greater sentence is necessary." Johnson objected to the sentence as unfair.

Johnson now appeals.

## III.

Johnson first argues that the government's repeated introduction of testimony concerning a white juvenile female during the trial of a black male, in front of an all-white jury was irrelevant and prejudicial, and that the court should have <u>sua sponte</u> stricken the testimony despite no objection having been made. He contends that the evidence created the "probability" that he was convicted based on prejudice, and the evidence had no probative value under Federal Rule of Evidence 403. According to Johnson, the error in admitting the testimony was not harmless because there was no overwhelming evidence against him.

8

As Johnson did not challenge the admission of the testimony at trial, this court reviews for plain error. United States v. Schier, 438 F.3d 1104, 1106 n.1 (11th Cir. 2005); United States v. Campbell, 223 F.3d 1286, 1288 (11th Cir. 2000). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005), cert. denied, 545 U.S. 1127 (2005) (citation omitted). "'If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (citation omitted). This court determines whether an error had substantial influence on the outcome by weighing the record as a whole. United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999).

Here, the testimony at issue did not prejudice Johnson's substantial rights. First, there were only two isolated comments in which Johnson's girlfriend was noted to be a white juvenile. See United States v. Diaz, 26 F.3d 1533, 1542 (11th Cir. 1994) (concluding that there was no improper injection of race and affirming conviction after witness recounted a statement referring to the defendant in a racially derogatory manner). Second, the evidence against Johnson was

overwhelming. The government submitted evidence from video tapes and wiretap communications, as well as the testimony of some of Johnson's co-conspirators. The video showed Johnson selling drugs, and the wiretap detailed Johnson's conversation about drugs with Ashley. Alonzo and Tabitha both testified that they had seen Johnson selling drugs. In statements to authorities, Johnson also admitted his involvement and identified his sources. Finally, authorities seized evidence from Johnson and his home that linked Johnson to drugs, drug sales, and weapons. Also, the government admitted photographs of Ashley with money, thus enabling the jury to see Ashley's race. In light of this evidence, the admission of only two comments regarding Johnson's girlfriend's race did not affect his substantial rights. According, we affirm Johnson's convictions.

Second, Johnson argues that the sentence imposed was unreasonable, and that the court failed to consider all the evidence when it imposed an upward variance from the ten-year mandatory minimum sentence on the firearm count. He asserts that his sentence is disproportionate to the sentences imposed on his co-conspirators, and that his young age and lack of prior prison time render the sentence unreasonable.[1]

---

[1] Johnson does not challenge the enhancement under either § 851 or § 924. His sole argument is that the court's decision to sentence him above the mandatory minimum for the firearm count was unreasonable.

After Booker, this court reviews a defendant's sentence for reasonableness. United States v. Dowd, 451 F.3d 1244, 1256 (11th Cir. 2006); United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). Johnson bears the burden of showing that his sentence was unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). In imposing sentence, the district court must consider the factors in § 3553(a), such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7). However, the district court is not required to mention each of the § 3553(a) factors, and it is sufficient if the record reflects that the court considered the factors. United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006).

Here, Johnson faced a ten-year mandatory minimum sentence under § 924(c), but the court sentenced him to twenty years imprisonment. In reaching the sentence, the court considered the history and characteristics of the defendant, as well as Johnson's statements to the court. The court also specifically stated that it had considered the § 3553(a) factors. Given the conspiracy involved, Johnson's criminal history, and his apparent willingness to use the firearm, the sentence

11

imposed was reasonable.

Third, Johnson argues that the court violated both § 3553(a) and due process by failing to both address the statutory factors and by failing to find that the sentence imposed was "not greater than necessary." Here the district court stated that it had "considered all the factors in Title 18 United States Code 3553(a)" and that the sentence is "sufficient and certainly no greater sentence is necessary." As Johnson concedes, however, this court has previously rejected this argument.

**IV.**

Accordingly, we **AFFIRM** Johnson's convictions and sentences.