[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16571
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00069-JDW-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC LEE SPOONER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 21, 2014)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Eric Lee Spooner, a federal prisoner serving a 132-month sentence for conspiracy to manufacture and distribute methamphetamine on a premises in which minor children were present and resided, appeals both his conviction and his sentence. According to the evidence presented at trial, Spooner and a former housemate produced several grams of methamphetamine at Spooner's residence for both personal use and distribution. On appeal, Spooner raises three arguments: (1) there was insufficient evidence to convict him of conspiracy; (2) the sentence was procedurally unreasonable because the evidence did not support the district court's finding regarding the amount of methamphetamine involved; and (3) the sentence was substantively unreasonable because the district court failed to adequately consider the sentencing factors. After careful review, we affirm the conviction and sentence, but vacate and remand the judgment to correct a clerical error.

I.

Spooner first argues that there was insufficient evidence to support his conspiracy conviction because (1) there was no evidence that he entered into an illegal agreement with another person and (2) there was no evidence that he produced "actual" methamphetamine as charged in the indictment. Both arguments are without merit.

When the challenge is preserved, this Court reviews de novo the sufficiency of the evidence, "viewing the evidence and making all reasonable inferences in favor of the verdict." United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). This Court will find the evidence sufficient if a reasonable trier of fact could find that it established guilt beyond a reasonable doubt. United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009).

But where the defendant moves for acquittal at the close of the government's case and does not renew the motion at the close of all of the evidence, this Court will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice. United States v. Schier, 438 F.3d 1104, 1107 (11th Cir. 2006). Under this standard, we will affirm the conviction unless "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (quotation mark omitted). In this case, Spooner did not move for a judgment of acquittal at the close of all the evidence and so is entitled to reversal only under the manifest miscarriage of justice standard, but we nevertheless review his conviction de novo because the result would be the same. See Greer, 440 F.3d at 1271.

To support a conspiracy conviction under 21 U.S.C. § 846, the government must prove that (1) there was an agreement between the defendant and one or more persons and (2) the object of the agreement was to commit an offense under Title 21 of the United States Code. United States v. Baker, 432 F.3d 1189, 1232 (11th

3

Cir. 2005).[1]  Here, there was sufficient evidence from which a reasonable jury could find both elements beyond a reasonable doubt.

## A.

Regarding the first element, Drug Enforcement Agency (DEA) Agent Tucker Cowles testified at trial to several admissions Spooner made when he was interviewed at his home.[2]  During the interview, Spooner said he produced methamphetamine in his house with the help of his former housemate, Christopher Spencer, for several months.  According to Spooner, the pair typically produced one-quarter to one-half ounce of methamphetamine three times per week.  They traded this methamphetamine to around fifty customers per week, sometimes for cash and sometimes for pseudoephedrine pills so they could produce more methamphetamine.  These admissions that Spooner cooperated with Spencer to produce and distribute methamphetamine supplied the jury with strong evidence of an illegal agreement.

Spencer also testified against Spooner pursuant to a plea agreement, corroborating Spooner's admissions to Agent Cowles.  According to Spencer, he

---

[1] We have previously recognized that the three-prong test Spooner urges us to apply is redundant for simple conspiracies like the one alleged here. United States v. Toler, 144 F.3d 1423, 1425 (11th Cir. 1998).  In such cases, the two-prong test we apply here is a "more accurate" description of the government's burden. See Baker, 432 F.3d at 1232 n.50.  But even if we were to apply the ill-suited three-prong test Spooner urges, his argument would fail.

[2] The interview took place after Spooner had been given a warning pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), and agreed to answer questions without an attorney.  Although Spooner moved to suppress the statements before the district court, he does not challenge the denial of that motion in this appeal.

began giving Spooner pseudoephedrine in exchange for methamphetamine in June 2011, although Spencer claimed that he was not initially aware that Spooner produced methamphetamine. When Spencer moved in with Spooner in July 2011, his involvement in Spooner's scheme moved beyond merely providing pseudoephedrine. Spencer testified that at that time, Spooner suggested to him that the two begin producing their own methamphetamine. Spencer agreed. Pursuant to the agreement, Spencer testified that they began making eight to fourteen grams of methamphetamine once or twice a week, which they then used personally, sold, and traded for more pseudoephedrine. This is yet more evidence from which a reasonable jury could readily conclude that Spooner and Spencer agreed to violate Title 21. See 21 U.S.C. § 841(a)(1) (making it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance"); Baker, 432 F.3d at 1232.

Spooner argues that Spencer's testimony is incredible on its face because Spencer was not able during his testimony to identify Spooner by his location in the courtroom and an article of clothing. Ordinarily, whether or not to credit a witness's testimony is the exclusive province of the jury. United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). So long as the testimony is not unbelievable on its face and thus incredible as a matter of law, this Court defers to

5

the jury's credibility determination.  Id.; see also United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985).

We conclude that Spencer's testimony was not unbelievable on its face. Spencer explained that his vision is quite poor and that he was wearing the wrong corrective lenses, and so a jury could readily find Spencer's testimony regarding his former relationship with Spooner credible even though Spencer could not identify him at that moment.  On the whole, Spencer's testimony was quite specific, which apparently assuaged any potential concern the jury may have otherwise had regarding the veracity of his testimony.  It assuages this Court's concerns as well, and so we decline to invade the traditional province of the jury by declaring Spencer's testimony incredible as a matter of law.  Accepting Spencer's credibility, and in light of Spooner's admissions to Agent Cowles, a reasonable jury could find an agreement to violate Title 21.

## B.

Regarding the second element, there was also sufficient evidence from which a reasonable jury could conclude that the object of Spooner and Spencer's agreement was to produce actual methamphetamine, as the indictment charged, as opposed to a mixture containing the drug.  DEA Agent Scott Oliver testified that the production method Spooner and Spencer used—often called the one pot method—yields a white powder that is "very pure methamphetamine," as opposed

to a mixture containing some methamphetamine.  Beyond that, Spencer testified that their aim was to produce methamphetamine, and gave no indication during his testimony that the product of their production process was anything but actual methamphetamine.

In an effort to counter this conclusion, Spooner relies on the testimony of Dr. Daniel Buffington, the defense expert, that one could expect the "yield" of an attempt to produce methamphetamine in a clandestine lab to be less than 20% to upwards of 80% or 90%.  Spooner's argument misses the mark for two reasons.  First, it evidences a misunderstanding of the term "yield."  Dr. Buffington defined "yield" as the total output of a chemical process as a percentage of the input ingredients.  Put differently, the yield describes the weight in grams of the white powdery substance produced at the end of the one pot method that one can expect from every gram of pseudoephedrine put into the process.  Spooner's argument assumes that the yield is the percentage of the white powdery substance produced at the end of the one pot method that is methamphetamine.  But this understanding of the end product finds no support in the record, which clearly establishes that the white powdery output of Spooner and Spencer's production method was—or, at least, was supposed to be—pure methamphetamine.

To be sure, Dr. Buffington testified that in some cases the production process would be unsuccessful and yield no methamphetamine.  This leads to the

7

second reason Spooner's arguments are unavailing: all the government must prove to meet the second element of conspiracy is that the purpose of the agreement was to produce actual methamphetamine.  See Baker, 432 F.3d at 1232.  That it may have been difficult to produce a lot of methamphetamine or even impossible to succeed is of no moment.  See United States v. Jones, 765 F.2d 996, 1002 (11th Cir. 1985).  Given the evidence that Spooner and Spencer agreed to undertake a production process designed, according to both Agent Oliver and Spencer, to yield pure methamphetamine, a reasonable jury could easily find that the purpose of the agreement was to succeed in the production process.  Because there is sufficient evidence from which a reasonable jury could conclude that the government established both elements of conspiracy, Spooner's sufficiency of the evidence challenge fails.

## II.

Spooner next challenges the legality of his sentence on two grounds.  First, he argues that the district court committed procedural error when it calculated his base offense level as though his conduct involved at least four grams of methamphetamine.  Second, he argues that the district court committed substantive error when it failed to adequately consider the 18 U.S.C. § 3553(a) sentencing factors.

8

This Court reviews the reasonableness of a sentence under a deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  The party challenging the sentence has the burden of establishing that the sentence was unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).

We assess the reasonableness of a sentence in two steps.  First, we ask whether the district court committed a procedural error, such as failing to calculate or improperly calculating the guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) sentencing factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.  Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Assuming the sentence is procedurally sound, we will then consider the substantive reasonableness of the sentence, again under an abuse of discretion standard.  Id.  This Court will vacate a sentence for substantive unreasonableness "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

9

A.

Spooner first argues that the district court committed procedural error when it applied the base offense level for an offense involving at least four, but less than five, grams of actual methamphetamine.[3]  Spooner notes that the jury found that the evidence established beyond a reasonable doubt only that Spooner's offense involved less than five grams of actual methamphetamine.  This jury finding at the trial stage, Spooner argues, evidences a lack of support in the record for the district court's quantity determination at the sentencing stage.

We review the district court's determination of the drug quantity involved to establish a base offense level for clear error.  United States v. Singleton, 545 F.3d 932, 934 n.2 (11th Cir. 2008) (per curiam).  Where, as here, the defendant challenges the drug quantity upon which the guideline range is based, the government bears the burden of establishing the disputed quantity by the preponderance of the evidence.  See United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012).

Cases like this one in which no drugs are actually seized by law enforcement present challenges in resolving the disputed quantity.  In these cases, the district

---

[3] The base offense levels for convictions involving methamphetamine range from 12 for crimes involving less than 250 milligrams of actual methamphetamine to 38 for 1.5 kilograms or more. United States Sentencing Guidelines (USSG) § 2D1.1(c).  The base offense level for convictions involving at least four grams but less than five grams of actual methamphetamine is 24.  Id. § 2D1.1(c)(8).  Spooner argued to the district court that a base offense level of 12 should be applied because there was a lack of evidence from which the court could infer a higher amount.

court must approximate the drug quantity. Id. at 1315–16. Although the district court's approximation may not be "merely speculative," it may properly be a "fair, accurate, and conservative estimate[]" of the quantity based on evidence presented at trial or at the sentencing hearing, or included as undisputed facts in the presentence investigation report. See United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998) (per curiam); see also United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004). We will only find clear error and disturb the district court's quantity approximation if we are left with a "definite and firm conviction that a mistake has been committed." Almedina, 686 F.3d at 1315 (quotation mark omitted).

Here, the government proved by a preponderance of the evidence that Spooner's conspiracy involved at least four but less than five grams of actual methamphetamine. Spooner's admissions to Agent Cowles indicated that he had produced seven to fourteen grams of methamphetamine approximately three times per week—amounting to 21.45 to 42.9 grams per week—for several months. Even accepting Spooner's arguments that his statements exaggerated the results of his production efforts, it is hard to imagine that his exaggerations deviated so far from the truth that they do not support the conclusion that at least four grams were produced over the duration of the conspiracy.

11

Spencer's testimony also indicated that the pair produced well in excess of four grams of actual methamphetamine. Spencer testified that he personally assisted Spooner in cooking methamphetamine approximately twenty times. On each occasion, Spencer estimated that their production efforts yielded between eight and fourteen grams of methamphetamine, suggesting that the conspiracy involved at least 160 grams.

The government also presented evidence at trial regarding the amount of pseudoephedrine purchases Spooner and Spencer made during the conspiracy. The evidence revealed that Spooner had purchased 57.8 grams of pseudoephedrine from June 2011 through November 2011. Agent Oliver testified that each gram of pseudoephedrine could theoretically yield 0.92 grams of actual methamphetamine, and Dr. Buffington estimated that a clandestine lab could expect a yield of anywhere from less than 0.2 grams to upwards of 0.9 grams for each gram of pseudoephedrine. Even if the yield was only 0.1 grams, a conservative estimate given Agent Oliver and Dr. Buffington's testimony, Spooner's pseudoephedrine purchases alone would have resulted in 5.78 grams of methamphetamine. And this does not even account for the additional pseudoephedrine Spencer provided or that the pair got from their customers in exchange for methamphetamine. On this record, the district court's conclusion that the conspiracy involved at least four

grams of methamphetamine is not clearly erroneous.  We therefore find no procedural error.

## B.

Spooner's final argument is that the district court committed substantive error by failing to give mitigating factors due consideration and instead unjustifiably relied on a single factor, resulting in a sentence greater than necessary to meet the goals of punishment set forth in 18 U.S.C. § 3553(a).

The weight given to any particular § 3553(a) factor is generally left to the sound discretion of the district court.  United States v. Amadeo, 487 F.3d 823, 832 (11th Cir. 2007).  As we have explained, we will only vacate a sentence for substantive unreasonableness if we are left with the "definite and firm conviction" that the sentence imposed was outside the range of reasonableness.  Irey, 612 F.3d at 1190.

At the sentence hearing, the district court noted each of the § 3553(a) factors and discussed them at length.  The court considered the "nature and circumstances" of the offense, as § 3553(a)(1) requires, when it recognized that Spooner contributed to a societal addiction problem by manufacturing and distributing methamphetamine on a large scale and that the offense had put his daughters at risk.  It also considered Spooner's personal characteristics, including his long term struggle with drug addiction, his family history, and his mental health issues.

13

Under § 3553(a)(2), the district court noted the seriousness of the offense; the societal costs of Spooner's conduct; the lack of respect addicts generally have for the law (including Spooner, evidenced by his lengthy criminal history); the need for deterrence; and the need to protect the public from Spooner. This evidences a thoughtful and thorough consideration of Spooner's particular circumstances.

Spooner's argument that the court failed to consider and give adequate weight to the mitigating factors is belied by the record. The court recognized that Spooner "was essentially feeding his own habit," and as a result concluded that the recommended minimum sentence under the guideline range was "greater than necessary to achieve the statutory purposes of sentencing." The court thus deviated downwards from the bottom of the applicable guideline range by nineteen months, an indication that the district court thoughtfully considered and weighed all the sentencing factors and imposed a sentence the court in its sound discretion believed was necessary to accomplish the purposes of § 3553(a). On this record, we cannot conclude that the sentence imposed was outside the range of reasonableness. Irey, 612 F.3d at 1190.

### III.

We sua sponte address a clerical error in the judgment. See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006). Spooner's indictment charged him with violating 21 U.S.C. §§ 846, 841(b)(1)(A)(viii), and 860a, and the government

14

filed an Information and Notice of Prior Convictions adding a § 851 offense.  The judgment form, however, lists only 21 U.S.C. §§ 846, 841(b)(1)(C), and 851.  The amendment to § 841(b)(1)(C) from § 841(b)(1)(A)(viii) accurately reflects the jury's finding that the offense involved less than five grams of actual methamphetamine instead of fifty grams.  But the judgment form should include a numerical reference to § 860a as a statute of conviction rather than merely incorporating the substance of the statute into the description of the "Nature of the Offense."  This scrivener's omission should be corrected.  See Massey, 443 F.3d at 822.

IV.

For these reasons, we conclude that the evidence was sufficient to support Spooner's conspiracy conviction and that it was well within the district court's discretion to sentence Spooner as it did.  However, we vacate and remand the judgment for the limited purpose of correcting a clerical error in the omission of § 860a as one of the statutes of conviction.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**.