[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12545
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cr-00096-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON ONEAL PREYER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 4, 2020)

Before BRANCH, GRANT, and FAY, Circuit Judges.

PER CURIAM:

Brandon Preyer appeals his conviction for possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Preyer argues that the government's evidence was insufficient to establish either that he knowingly possessed the firearms and ammunition described in the indictment or that he knew of his status as a convicted felon.  We disagree, and therefore affirm.

I.

As part of an investigation that centered around Preyer's girlfriend, Paola Sotolongo, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives secured a warrant to search the house where Preyer and Sotolongo lived.  During the search, the agents found a 16-gauge shotgun, several 16-gauge shotgun shells, and a loaded .22-caliber semi-automatic rifle in the bedroom that Preyer shared with Sotolongo.  Preyer, who had previously been convicted of several felony offenses, was charged with possession of firearms and ammunition by a convicted felon.

Preyer proceeded to trial, where the government presented testimony from Sotolongo, other witnesses who lived in the house with Preyer and Sotolongo at the time of the search, three ATF agents, and a prisoner who had spoken with Preyer while they both were held in the county jail.  At the close of the government's case, Preyer moved for a judgment of acquittal on general grounds, arguing that one of the witnesses was not credible.  The district court denied the

2

motion, and Preyer did not testify or present any evidence.  The jury found Preyer guilty as charged.  After trial, Preyer renewed his motion for judgment of acquittal, arguing that there was insufficient evidence to prove that he knowingly possessed firearms and ammunition, and that the government had failed to prove the required nexus between the ammunition and interstate commerce.  The district court denied Preyer's renewed motion and later sentenced him to 24 months in prison followed by one year of supervised release.

On appeal, Preyer argues that the government presented insufficient evidence for the jury to conclude beyond a reasonable doubt that he knowingly possessed the firearms and ammunition at issue.  For the first time, he also argues that the government failed to present sufficient evidence that he knew that one or more of his previous convictions were for crimes that were punishable by imprisonment for more than one year.

## II.

We review a preserved challenge to "the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict."  *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006).  "We will not overturn a conviction on the grounds of insufficient evidence 'unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v.*

3

*Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (quoting *United States v. Christo*, 129 F.3d 578, 579 (11th Cir. 1997)).

When the defendant raises a claim challenging the sufficiency of the evidence on a ground not argued below, however, we review the new claim for plain error only. *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013). Plain-error review applies where, as here, the defendant filed a motion for judgment of acquittal below but challenged the sufficiency of the evidence supporting a different element of the crime, or supporting his conviction generally, and failed to make the specific argument that he raises on appeal. *See id*. at 1103.

III.

Section 922(g)(1) prohibits the possession of firearms or ammunition by any person who has been convicted of a crime punishable by imprisonment for more than one year. To convict a defendant of a violation of this statute, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). The jury may infer a defendant's knowledge from circumstantial evidence. *See id*. at 2198 (citing *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)); *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

4

A.

To show that Preyer knowingly possessed the firearms and ammunition, the government "need not prove actual possession" but rather "need only show constructive possession through direct or circumstantial evidence." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006). Constructive possession requires "knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion." *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996) (citation and internal quotation marks omitted).

We readily conclude that the government met its burden of proof under these standards. One of Preyer's housemates, Brandon Ptomey, testified that he helped Preyer move his belongings from Preyer's father's house when Preyer moved in with Sotolongo about a month before the ATF search. According to Ptomey, one of the items that Preyer brought with him when he moved was a shotgun that Preyer said he had inherited from his father.

Another of Preyer's housemates, Steve Burleson, testified that Preyer came to his room shortly after Preyer moved in, asking Burleson if he would store two firearms in his closet. Preyer had a shotgun and what looked like a rifle in a soft camouflage gun case. Burleson, who was also a convicted felon, refused to store the guns, and Preyer promised that he would get rid of them.

5

ATF agents who participated in the search of the house testified that they found the .22-caliber rifle in a soft camouflage gun case in the master bedroom closet. The rifle was loaded, and there was a single 16-gauge shotgun shell in the case with the rifle. The agents found the 16-gauge shotgun under the mattress in the master bedroom and several more 16-gauge shotgun shells in a storage container that also held men's clothing and documents bearing Preyer's name. The agents also found a wallet containing Preyer's identification card and Social Security card on a shelf next to the bed in the master bedroom.

Sotolongo testified that she shared the bedroom where agents found the firearms and ammunition with Preyer. She also testified that the firearms and ammunition were not hers, and that she was not aware that they were being stored in the bedroom until the agents found them there.

The government also called Deangelo Black, a federal prisoner who had encountered Preyer when they were both in holding at the county jail after Preyer's arrest on the gun-possession charges. According to Black, Preyer said that he had possessed a firearm but he did not think that the government would be able to prove possession because there were no fingerprints on the firearm and Preyer did not think that Sotolongo or any of his other housemates would testify against him. Preyer said that one of the guns was a .22-caliber rifle, and one was a shotgun that his father had left him.

This evidence was sufficient to prove Preyer's constructive possession of the firearms and ammunition.  Ptomey's testimony that Preyer told him about the shotgun and Burleson's testimony that he saw Preyer with both firearms were sufficient for a reasonable jury to conclude that Preyer knew about the firearms.  And evidence that Preyer owned the shotgun, that the firearms and ammunition were found in Sotolongo and Preyer's room with his other belongings, and that the guns did not belong to Sotolongo was sufficient to prove that he had the ability to maintain control of the weapons and take physical possession of them at any time.

## B.

Because Preyer did not challenge the sufficiency of the government's evidence that he knew of his status as a convicted felon in the district court, we consider that argument under the plain-error standard.  *See Joseph*, 709 F.3d at 1103.  Under that standard, we may correct an unpreserved error that is plain or obvious and affects the defendant's substantial rights, but we will do so only if the error also "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Cotton*, 535 U.S. 625, 631 (2002) (alteration in the original) (citation omitted).  To show that an error affected his substantial rights, Preyer "must show there is a reasonable probability that, but for the error, a different outcome would have occurred; and a reasonable probability is a probability 'sufficient to undermine confidence in the outcome.'"  *United States v.*

7

*Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018) (citation omitted), *cert. denied sub nom. Garcia v. United States*, 139 S. Ct. 2027 (2019).  He cannot make that showing here.

Under *Rehaif*, the failure to include Preyer's knowledge of his status as a felon in the indictment, to require the government to prove that knowledge beyond a reasonable doubt, and to instruct the jury that such knowledge was an element of the crime was plain error.  *See Rehaif*, 139 S. Ct. at 2200; *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019).  But Preyer cannot show that there was a reasonable probability that the outcome of his trial would have been different in the absence of this error.

At trial, the government introduced into evidence certified copies of Preyer's eight prior felony convictions, as well as matching fingerprint cards connecting Preyer with those judgments.  One of the judgments showed that Preyer had entered a nolo contendere plea to five counts of grand theft auto and two counts of burglary of an unoccupied structure and had been sentenced to 24 months in state prison on each count (to be served concurrently).  This evidence was sufficient to establish beyond a reasonable doubt that Preyer knew that one or more of his prior crimes was "punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), especially when considered in conjunction with the evidence that Preyer tried to store the firearms in Burleson's closet.  Furthermore, according

8

to the presentence investigation report (PSR), Preyer in fact served more than one year of his 24-month sentence in prison for the grand theft auto and burglary convictions.  *See Reed*, 941 F.3d at 1021–22 (we "may consult the whole record when considering the effect of any error on [the defendant's] substantial rights," including facts in the PSR to which the defendant raises no objection (citation omitted)).  "Because the record establishes that [Preyer] knew he was a felon, he cannot prove that the errors affected his substantial rights or the fairness, integrity, or public reputation of his trial."  *Id.* at 1022.

### IV.

The evidence presented at trial was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Preyer was guilty of possessing a firearm as a convicted felon.  We therefore affirm.

**AFFIRMED.**