**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patrick D. BRANTLEY, a/k/a "Red", Kenneth L. Rivers, a/k/a "Kenneth Johnson", Harold Brown, a/k/a "Otis Lee Brown", Bobby A. Bryant, a/k/a "Bobby Ali Bryant", Orson O. Davis, Defendants–Appellants.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Orson O. DAVIS, Bobby A. Bryant, a/k/a Bryant, Bobby Allen, Harold Brown, a/k/a Brown, Otis Lee, Kenneth L. Rivers, a/k/a Kenneth Johnson, Defendants–Appellants.**

Nos. 92–4366, 93–4890.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1995.

Hector L. Flores, Asst. Federal Public Defender, Miami, FL, James R. Gailey, Federal Public Defender, Miami, FL, for Davis.

Marc David Sarnoff, Sarnoff & Bayer, Coconut Grove, FL, for Bryant.

Kevin M. Emas, Thornton, Rothman & Emas, P.A., Miami, FL, for Brown.

Geoffrey C. Fleck, Friend & Fleck, South Miami, FL, for Rivers.

Roberto Martinez, U.S. Atty., Miami, FL, Mary V. King, Dawn Bowen, Asst. U.S. Attys., Miami, FL, for U.S.

Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellants Patrick D. Brantley, Harold Brown, Bobby A. Bryant, Orson O. Davis and Kenneth L. Rivers were found guilty after a trial by jury of conspiracy to possess cocaine with intent to distribute. 21 U.S.C. § 841(a)(1). Rivers, Bryant and Brantley also were found guilty of using and carrying a firearm during the commission of a drug offense. 18 U.S.C. §§ 924(c) and 2. Rivers and Bryant were convicted of possessing a firearm, having previously been convicted of a felony. 18 U.S.C. § 922(g)(1). Additionally, Rivers was convicted of possessing an unregistered fully automatic firearm, 26 U.S.C. §§ 5861(d) and 5871, and Bryant of possessing a firearm that had been transported in interstate commerce and had its serial number obliterated. 18 U.S.C. §§ 922(k), 924(a)(1)(B).

The conspiracy convictions resulted in sentences of 300, 324 and 360 months imprisonment, respectively, for Brown, Rivers and Bryant, and 188 months for Brantley and Davis. Rivers and Bryant received concurrent sentences of 120 months for their weapons possession convictions, and Bryant received an additional concurrent sentence of 60 months for his violations under § 922(k) and § 924(a)(1)(B). Lastly, Rivers, Brantley and Bryant were each sentenced to a term of 360 months for their § 924(c) convictions, to be served consecutively.

Davis argues that there was insufficient evidence to support his conspiracy conviction. Bryant asserts that the trial court abused its discretion when it denied the continuance he requested upon learning of the superseding indictment modifying the charge against him for possessing a firearm with a partially obliterated serial number. Bryant, Rivers and Brantley also contend that the United States Supreme Court's holding in *Staples* requires reversal of their convictions for possession of an automatic firearm. Collectively, the ap-

pellants also seek reversal on the ground that the process of jury selection violated their right to be present at all phases of their trial.[1]

## I. FACTS

In July 1991, Jesse Trujillo, a confidential informant for the Metro–Dade Police Department, was approached by Vernon Florence at a shopping center. Florence and Trujillo had never met. During their conversation, Trujillo expressed a desire to "rip off" someone. The two exchanged phone numbers and met again a few days later.

Trujillo told Florence that he was looking for people to participate in the robbery of a stash house belonging to a drug dealer for whom his cousin worked. Multiple kilograms of cocaine and a large amount of cash were to be stolen. Florence said that he had "the perfect people" to carry out the robbery, and drove Trujillo to an apartment building where they met appellant Harold Brown. The three discussed the planned invasion.

Several days later, Brown notified Florence that he had found some other people who were interested and suggested a meeting. Brown, Florence, Rivers and Brantley met and began planning the robbery. Subsequently, the four met again to discuss the plan's execution, this time joined by appellant Bryant. The group instructed Florence to find out from Trujillo how many people would be in the house, whether they could obtain a key for easy entry, and in how many rooms the contraband would be located. During a number of telephone conversations, Trujillo told Florence that 72 kilograms of cocaine and a large amount of cash were at the house and that it was guarded by three people. Trujillo said that his cousin would supply a key and a floor plan describing the location of the cocaine and the money, as well as information about the safest time to commit the robbery. Florence assured Trujillo that the group would have the needed "equipment;" Brown had agreed to acquire guns and silencers.

footnote

1. The appellants raise numerous other issues on appeal. We conclude that their claims regarding these issues are without merit and warrant no further discussion. Accordingly, we summarily affirm the district court as to all issues not herein discussed.

On July 29, Trujillo met with Florence, Rivers and Brantley. At that meeting, which was observed by law enforcement, Trujillo outlined the floor plan of the house and indicated the location of the cocaine and the cash. The four agreed to carry out the invasion the next day. They designated a nearby service station as the staging area and post-robbery rendezvous point. Florence, Brantley and Rivers reviewed the plan later with Bryant.

On July 30, the group convened at Brown's house. Brown explained to Florence that they had to stop at the apartment of appellant Davis to "pick up some guns." When they arrived at Davis', he handed a 9 mm Uzi semi-automatic pistol to Dwayne Fairell.[2] Davis went to another apartment to retrieve a second gun, a 9 mm Sig Sauer handgun, which he took with him. The group then left to meet Trujillo at the service station. Bryant, Rivers and Brantley proceeded from the service station to the stash house with Trujillo, in his car. Florence, Brown, Davis and Fairell were to follow and provide "backup." Instead, however, they remained at the service station.

En route to the stash house, the guns were distributed in Trujillo's car. Rivers took an M–10, .45 caliber pistol that was designed as a semi-automatic weapon but had been converted into an automatic machine gun. Brantley took the Uzi, and Bryant took an SWD, Inc. M–11 9 mm semi-automatic pistol with a partially-obliterated serial number. Trujillo pulled into the driveway of what was ostensibly his cousin's house, but unbeknownst to appellants actually belonged to the Bureau of Alcohol, Tobacco and Firearms ("ATF" or the "Bureau"). Rivers, Bryant and Brantley entered the front porch, firearms in hand. Trujillo, at the Bureau's instruction, opened the trunk of the car so that appellants could deposit the contraband in it, and crouched on the ground to avoid being hit by gunfire. Unable to unlock the front door with the key, Bryant approached Trujillo; he asked Trujillo why he was crouched

down. Trujillo replied that he thought he heard a car coming, and Bryant returned to the house. Trujillo became afraid, however, and ran from the driveway. Bryant, Brantley and Rivers followed him, running directly into the police perimeter, where they were arrested. Fairell, Florence, Brown and Davis were arrested at the service station. The arresting officers found Davis' loaded handgun lying on the front seat of one of the vehicles in an open case.

## II.  SUFFICIENCY OF THE EVIDENCE

■ Davis argues that the evidence was insufficient to support his conviction. We review claims for insufficiency in the light most favorable to the government. *United States v. Bush*, 28 F.3d 1084, 1087 (11th Cir.1994). If a reasonable jury could have found that the evidence established guilt beyond a reasonable doubt, the verdict will be upheld. *Id.*

■ With respect to Davis' involvement, the facts support a reasonable inference of knowledge and intent. During the planning stages of the conspiracy, Brown stated that he would procure the weapons for the robbery. On the day of the robbery, Brown announced that they were going to Davis' to pick up the weapons. The jury may reasonably have inferred that Davis expected Brown to come for the Uzi, because Davis had it immediately available when Brown arrived. Davis also brought the Sig Sauer for himself and, in his post-arrest statement, acknowledged ownership of both guns.

Davis accompanied the conspirators to the service station, and waited there with some of them for the others to return from the stash house. The original function of this secondary group was to follow the principals and provide "backup." The jury may reasonably have considered it to be highly improbable that the conspirators would include Davis so closely in their activities without fully apprising him of the scope of the conspiracy.[3]

---

2.  Dwayne Fairell was tried on the conspiracy charge with appellants and found not guilty.

3.  This court has recognized that when drawing inferences from the evidence, juries may rely

upon their perceptions of what is probable in light of their reason and common experience. *See United States v. Cruz–Valdez*, 773 F.2d 1541, 1546 (11th Cir.1985) (en banc), *cert. denied sub*

Davis' claim of innocence necessarily depends on the strained assumption that the group of conspirators somehow induced an innocent person to provide two pistols, then invited him to accompany them on a dangerous criminal mission, and remained absolutely silent about their true purpose during the ride to the staging area in the privacy of their own vehicle. In light of the fact that an innocent Davis could easily have alerted the police at the service station-staging area if he had become suspicious, we believe that the more reasonable inferences from the evidence are that Davis knew the purpose of the mission and knowingly participated.

■ Additionally, Brown is the brother of Davis' common law wife. This personal relationship makes it even more unlikely that Brown would not have disclosed the full extent of the plans to Davis. Viewed in the light most favorable to the government, the evidence supports a reasonable inference by the jury that Davis knowingly participated in the conspiracy to invade the stash house.[4]

■ Davis maintains that his acquittal on Count II, which charged him with using a firearm during the commission of a drug offense, requires the conclusion that the jury discounted his post-arrest statement claiming responsibility for providing the automatic weapons for the invasion. A defendant convicted by a jury on one count cannot attack the conviction because it was inconsistent with the verdict of acquittal on another count. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Davis hypothesizes that the jury must have "rejected" the post-arrest statement, but "[such] an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally do not undertake." *Id.,* 469 U.S. at 66, 105 S.Ct. at 477.

## III. SUPERSEDING INDICTMENT

On the fifth day of trial, Appellant Bryant requested a continuance on the ground that he did not learn of the second superseding indictment until that day. He argues that the district court abused its discretion in denying his motion.

■ The mandatory 30–day trial preparation period provided by the Speedy Trial Act is not automatically restarted upon the filing of a superseding indictment. *United States v. Rojas–Contreras,* 474 U.S. 231, 236, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985). Instead, trial courts have broad discretion to grant continuances when necessary for additional preparation. *Id.*

Count Six originally charged Bryant with possessing a firearm that had its serial number obliterated or damaged in violation of §§ 5861(h) and 5871 of Title 26, the Internal Revenue Code. As modified in the second superseding indictment, Count Six makes substantially the same allegation but adds that the firearm had been transported in interstate commerce, changing the statutory reference to §§ 922(k) and 924(a)(1)(B) of Title 18, the Criminal Code.

■ Bryant complains that he was deprived of the opportunity to cross-examine witnesses with respect to Count Six, and unable adequately to prepare for trial. At trial, however, he did not attempt to re-call any of the government witnesses for cross-examination. He fails to identify any deficiencies in his trial preparation, and points to no other way in which prior notice of the introduction of the interstate commerce element of Count Six may have altered the course of the trial. Moreover, the weapon, which was seized in southern Florida, bore an imprint indicating that it had been manufactured in Atlanta, a clear indication of interstate commerce which must have been known by him all along. In view of these facts, we find that the district court's denial of Bryant's request for a continuance was not

*nom., Ariza–Fuentas v. United States,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

**4.** Although mere association with conspirators and mere presence at the scene of a crime do not in themselves establish participation in a crimi-

nal conspiracy, a jury may properly consider both in conjunction with one another and with other facts to infer knowing and intentional participation. *Cruz–Valdez,* 773 F.2d at 1545.

an abuse of discretion, and that it caused no prejudice to Bryant's interests.

## IV. THE *MENS REA* REQUIREMENT OF § 924(c)

Appellants Bryant, Rivers and Brantley claim that the United States Supreme Court's holding in *Staples v. United States,* — U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), decided while their appeal was pending, compels reversal of their convictions for possession of an automatic firearm during the commission of a drug offense. 18 U.S.C. § 924(c).. The principles set forth in *Staples,* however, actually militate against such an expansive reading of that decision.

The Supreme Court held in *Staples* that in a prosecution for possession of an unregistered automatic firearm under 26 U.S.C. § 5861(d),[5] the government must prove beyond a reasonable doubt that the defendant knew that the firearm possessed characteristics bringing it within the scope of the statute. Like the M–10, .45 caliber pistol carried by appellant Rivers, the gun in *Staples* was a semi-automatic weapon that had been internally modified to fire automatically; its outward appearance gave no indication of its enhanced firing capability. The Court concluded that the defendant could not be convicted of possession under § 5861(d) unless the government proved that he knew the weapon was capable of automatic fire.

▓▓▓▓ Rivers, Bryant and Brantley were charged with possession of an automatic firearm under § 924(c) because Rivers carried the altered M–10 during the home invasion. Because there was no evidence at trial that Rivers knew that his weapon had been altered to fire automatically, the government concedes that *Staples* compels reversal of his § 5861(d) conviction. Rivers, Bryant and Brantley further argue, however, that *Sta-*

*ples* requires reversal of their § 924(c) convictions. Because § 924(c) is an enhancement statute, we find that it does not require proof that a defendant had particularized knowledge of a weapon's proscribed features; it is sufficient to prove simply that a defendant knew he possessed a firearm.

*Staples* relied primarily on the application of two legal principles. When a statute is silent as to the mental state required for the commission of an offense, the common law presumes the existence of a *mens rea* element. Further, the provision of severe penalties for violation of a statute "tend[s] to suggest that Congress did not intend to eliminate a *mens rea* requirement."[6] *Staples,* — U.S. at ——, 114 S.Ct. at 1804.

As the appellants point out, § 924(c) imposes a mandatory 30–year enhancement on their sentences. The *Staples* Court carefully refrained, however, from stating that the imposition of substantial penalties definitively indicates the existence of a *mens rea* requirement, and expressly cautioned, "We emphasize that our holding is a narrow one." *Id.* Nor does the reasoning of *Staples* suggest that enhancement statutes such as § 924(c) should be parsed into their individual components,[7] each one containing a *mens rea* requirement independent of that required to prove the underlying offense. Describing the rationale supporting the law's presumption favoring *mens rea,* the Court explained that the American legal system ordinarily imposes severe penalties only on actors possessing a "vicious will." Further, the Court noted the "care we have taken to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.'" *Id.* at ——, 114 S.Ct. at 1799 (citation omitted).

These concerns are absent in the case of sentence enhancements. Unlike the law-

---

5. Section 5861(d) criminalizes possession of a "firearm" that is not registered in the National Firearm Registration and Transfer Record. The term "firearm" includes machineguns; a machinegun, in turn, is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. §§ 5845(a), (b).

6. Violation of § 5861(d) may result in a prison term of up to ten years.

7. Section 924(c) provides for three tiers of penalties, which differ according to the weapon used by the defendant.

abiding individual who unknowingly comes into possession of an illegal firearm, the § 924(c) defendant whose sentence is enhanced based on the type of weapon he carried has demonstrated a "vicious will" by committing the principal offense. A sentence enhancement compounds the punishment for the offense, but falls far short of "criminaliz[ing] . . . apparently innocent conduct."

In the *Harris* decision, the Court of Appeals for the District of Columbia Circuit addressed the *mens rea* requirements of both § 5861(d) and § 924(c). *United States v. Harris*, 959 F.2d 246 (D.C.Cir.), *cert. denied sub nom., Smith v. United States,* —— U.S. ——, 113 S.Ct. 362, 121 L.Ed.2d 275, *Palmer v. United States,* —— U.S. ——, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992). Like the *Staples* majority, the *Harris* court stressed that the defendant convicted under § 5861(d) is not necessarily someone who is otherwise engaged in criminal activity. The court held that the jury must find that the defendants knew the weapons at issue were machine guns before reaching a guilty verdict. With respect to § 924(c), however, the *Harris* court rejected the argument that the government must show knowledge of the precise nature of the weapon used. The court explained:

> Consistent with the presumption of *mens rea* in criminal statutes, we assume that § 924(c) is violated only if the government proves that the defendant engaged in drug trafficking and intentionally used firearms in the commission of a drug trafficking crime. . . . [A]ssuming that the essential elements of the crime (drug trafficking and use of a firearm) already require a showing of *mens rea,* there does not seem to be a significant difference in *mens rea* between a defendant who commits a drug crime using a pistol and one who commits the same crime using a machine gun; the act is different but the mental state is equally blameworthy.

*Id.* at 258–59. In other words, unlike the § 5861(d) context, the risk of imposing punishment on an innocent actor is absent. Therefore, although the enhancements in

§ 924(c) are weapon-specific, the *mens rea* showing required by the statute is not. *Cf. United States v. Langley,* 62 F.3d 602, 606–07 (4th Cir.1995) (en banc) (because felon-in-possession statute, 18 U.S.C. § 922(g)(1), requires proof of *mens rea* as to possession of a firearm, there is no need to prove *mens rea* as to other elements of the crime).

We find the reasoning of the *Harris* court persuasive and consistent with *Staples.*[8] Thus, while *Staples* compels us to reverse Rivers' § 5861(d) conviction, his, Bryant's, and Brantley's § 924(c) convictions are affirmed. *Cf. United States .v. Fry,* 51 F.3d 543, 546 (5th Cir.1995) (rejecting argument that *Staples* precluded application of the automatic weapons enhancement contained in the United States Sentencing Guidelines, reasoning, "*Staples* . . . [is] inapposite because [it] deal[s] with convictions for strict liability crimes rather than with strict liability sentencing enhancements").

## V. JURY SELECTION

The appellants argue that their constitutional right to be present at all phases of their trial was abridged because they were not present during the time jury challenges were exercised, and also because the court held an *ex parte* meeting with one of the original jurors.

After *voir dire* was conducted in open court in the appellants' presence, the trial judge asked counsel to stipulate to holding the next phase of jury selection in chambers. The judge afforded defense counsel the opportunity to confer amongst themselves and with the appellants prior to the striking of the jury. The final phase of jury selection then took place in chambers, in the appellants' absence. Although the appellants made no objection to their exclusion from these proceedings, they argue on appeal that by conducting jury selection in this manner the court committed reversible error.

▆▆▆▆  The right to be present during one's trial arises from the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment, and

---

**8.** *Harris* was decided by a three-judge panel that included Justices Ruth Bader Ginsburg and Clarence Thomas, both of whom were in the *Staples* majority.

is codified at Rule 43 of the Federal Rules of Criminal Procedure. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). Defendants need not be expressly warned of their rights under Rule 43, and such rights may be waived by a voluntary absence from trial. *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam); Fed. R.Crim.P. 43. The waiver does not have to be express or on the record in order to be valid. *Taylor,* 414 U.S. at 20, 94 S.Ct. at 196. Failure to assert the right to presence or to object to a violation of Rule 43 may constitute a valid waiver. *Gagnon,* 470 U.S. at 529, 105 S.Ct. at 1485–86.[9]

■ This court has held that with respect to jury selection, the right to presence may be waived by a defendant's voluntary absence. *United States v. Willis,* 759 F.2d 1486, 1500 (11th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). In *Willis,* the defendants were present for general *voir dire* but did not attend the individual *voir dire* subsequently held by the court in chambers. We found that the defendants had waived their right to be present during the individual *voir dire.* If waiver may be effected by a defendant's voluntary absence in these circumstances, which involve a more significant phase of jury selection than that at issue in this case, it follows that the appellants in this case also effected a valid waiver by their voluntary absence.

■ Moreover, the appellants identify no prejudice, real or speculative, caused by their absence. The appellants were present during the general *voir dire* that took place in open court, where they had the opportunity to learn about the members of the jury panel and to assess the potential composition of the jury. They also had the opportunity to discuss with their attorneys any misgivings they had with respect to particular members and their use of peremptory challenges. Even assuming there was a Rule 43 violation and no effective waiver of it, the error was harmless.

The appellants also protest the lower court's *ex parte* meeting with one of the jurors. The day after the jury was empaneled, the trial court judge announced in open court that a juror had contacted him that morning. The judge reported that he had held an *ex parte* meeting with the juror in chambers, in the presence of his clerk and reporter, at which the juror explained that she had failed to state during *voir dire* that her children had been involved in drug-related arrests. The judge brought the juror into open court, with the appellants present. The appellants questioned her and, upon their request, she was excused. None of the appellants protested their exclusion from the *ex parte* conference at this time.

■ We have held that there is no blanket prohibition against the *ex parte* examination of jurors by a trial judge. *United States v. Camejo,* 929 F.2d 610, 615 (11th Cir.), *cert. denied sub nom., Setien v. United States,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991). Even if such a conference violated Rule 43, the error may be harmless if the court takes sufficient precautions to ensure against prejudice to the defendants' interests. *See United States v. Watchmaker,* 761 F.2d 1459, 1466 (11th Cir.1985), *cert. denied sub nom., Harrell v. United States,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986) (any error under Rule 43 rendered harmless by conduct of district court, which carefully framed comments to juror, made transcripts of meeting with juror available to counsel, and entertained objections to meeting in the form of post-judgment motions).

■ The appellants fail to identify any way in which the court's meeting with the juror prejudiced their interests. Moreover, the court below negated any prejudice that the appellants may have suffered by their absence when it granted their request to excuse the juror. Consequently, the appellants' argument for reversal on this ground is without merit.

---

9. Appellants maintain that insofar as the right to presence derives from the Constitution, it may not be waived by the mere failure to object; thus, they argue, the case law, decided on Rule 43 grounds, is inapposite. Because appellants failed to raise this argument below, we decline to entertain it.

Pursuant to the discussion in Part IV of this opinion, appellant Rivers' conviction under 26 U.S.C. § 5861(d) is reversed. In all other respects the decision of the court below is affirmed.

AFFIRMED in part, REVERSED in part.