[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13456
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00054-FTM-99DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YOHALVIS MOLINA-ALFONSO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 29, 2010)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Yohalvis Molina-Alfonso appeals his convictions and sentences for

conspiracy to possess with intent to distribute at least 100 marijuana plants, in

violation of 21 U.S.C. § 846, and possession with intent to distribute less than 100 marijuana plants, in violation of 21 U.S.C. § 841.  We affirm.

I. Background

Molina-Alfonso, Alain Alfonso,[1] and Danny Rivero were charged by second superseding indictment with conspiracy to possess with intent to distribute at least 100 marijuana plants, in violation of 21 U.S.C. § 846, and possession with intent to distribute at least 100 marijuana plants, in violation of 21 U.S.C. § 841.

The evidence at trial established the following:[2] Detective Ernest Gelinas of the Highland County Sheriff's Office received a tip about a house at 205 Ballard Road and initiated surveillance.  On December 4, 2007, he observed several vehicles at the house prompting Gelinas, Detective Proctor, and City of Avon Park police officer Lawrence Schneider to investigate further.  Gelinas approached the house with sirens activated, but no one responded.  About thirty minutes later, a man exited the house, went to one of the cars, and returned to the house. Thereafter, Rivero and another man exited the rear of the house.  As Gelinas and Proctor approached Rivero, they observed a white van parked by the garage door and several black trash bags with marijuana stems inside.  Gelinas could smell

---

[1]  Alain Alfonso is not related to the defendant.

[2]  Defense counsel made numerous objections to the testimony of the government's witnesses and to the admission of evidence.  Because we conclude that Molina-Alfonso fails to properly challenge these evidentiary rulings on appeal, we do not discuss the objections here.

marijuana in the yard.

Gelinas, Proctor, and the two men returned to the front of the house and knocked on the front door. Molina-Alfonso exited the house and spoke with police. Officer Juan Delgado translated for the suspects and explained consent-to-search forms, which both Molina-Alfonso and Rivera signed. A search of the car revealed cash, rooting compound used to clone plants, fans, extension cords, electrical components, a drill, a thermostat, and a Home Depot receipt tied to Rivera. In the white van, police found loose marijuana, some of which was brown and old, leaving police to believe that the van had been used to transport marijuana on several occasions.

During the search, police found marijuana hanging to dry in the garage. Inside the house, police found an energy bill in the name of Julio Espinosa for a house at Highlands Boulevard. They also found marijuana, trimmings called "shake," chemicals to fertilize the plants, and materials often used in grow houses. Police observed that the duct work in the house had been altered to help distribute air conditioning, which, in Gelinas's experience, was consistent with running a grow house. Gelinas explained that it did not appear the men were growing marijuana in the house at the time of the search, but that the house was probably a grow house at some point. At the time of the search, the house was being used to

3

dry marijuana.

Police interviewed Molina-Alfonso. He admitted that he lived in the Ballard Road house, had been renting it from Rivera for the last two months at $1,700 per month, and drove the white van found at the house. He explained that when he went to purchase livestock feed, he found the trash bags with marijuana on the side of the road. He took the bags home to dry the plants. He planned to keep the marijuana for personal use. Officer Delgado, however, thought it was unlikely that the drugs were for personal use given the quantity.

Highlands County Sheriff's Officer Randy Labelle went to the Highlands Boulevard address listed on the power bill found in the Ballard Road house and, through the window, could see that it was a dismantled grow house. Labelle did not see anyone at the residence, however he could see irrigation drums, fertilizer, fans, and holes in the walls and ceiling.

In April 2008, as part of a DEA task force on grow houses, Cape Coral police officer Don Donakowski conducted surveillance of a house at 1207 NW 21st Avenue. After Donakowski observed a gold Maxima leave the house, police conducted a traffic stop of the Maxima; Alain Alfonso was the driver and registered owner of the Maxima and Molina-Alfonso was the passenger. A subsequent search of the 1207 NW 21st Avenue residence revealed plastic buckets

4

with soil and root systems, a grow room with a marijuana bud on the floor, 56 buckets with intact root systems, and another 51 baby marijuana plants in the bathtub in the master bathroom.

Police also found lease agreements showing that Rivera leased the 1207 NW 21st Avenue house to Molina-Alfonso and Alain Alfonso. In the kitchen, police found a food saver and storage bags later determined to have Molina-Alfonso's prints on them.[3]

Molina-Alfonso and Alain Alfonso were placed in the back seat of a patrol car and their conversation was recorded. In the conversation, Molina-Alfonso told Alain Alfonso, "What you have to do is say that you bought it for yourself, that it's yours, that it was for your own consumption . . . Last time I said I wanted for my own consumption, and I got out. It's not a federal case. If it is buying and selling, and so on, it's a federal case, you don't get out. You just say that is was for your consumption." Julissa Sanchez, a secretary with the Cape Coral police department translated the conversation from the patrol car. Although she had not typed up the transcript, she confirmed its accuracy.

The government offered as evidence crime lab reports and tests confirming

---

[3] Defense counsel objected to the admission of the fingerprint cards for lack of foundation and as hearsay. Counsel also objected to the testimony and report of forensic specialist Elizabeth Lansky. The court overruled the objections.

that the sample sent to the lab was marijuana. The government also proffered testimony that Molina-Alfonso entered the United States from Cuba in 2006, Danny Rivero arrived from Cuba in 1997, and Alain Alfonso arrived from Cuba in 2007.

After the government rested, Molina-Alfonso moved for judgment of acquittal and for a mistrial. The court denied both motions. Molina-Alfonso did not testify and the defense presented no other evidence. The jury convicted Molina-Alfonso of conspiracy to possess with intent to distribute at least 100 marijuana plants and possession with intent to distribute less than 100 marijuana plants.

The probation officer prepared a presentence investigation report ("PSI"), grouping the two offenses together under U.S.S.G. § 3D1.2(d) and assigning a base offense level of 18 under § 2D1.1(c)(11). With no enhancements or reductions, and a criminal history category of I, the guidelines range was 27 to 33 month's imprisonment. Because the conspiracy count carried a mandatory minimum sentence of 60 months' imprisonment, the mandatory minimum became the guideline range.

Molina-Alfonso asserted that he was entitled to reductions for acceptance of responsibility under § 3E1.1(a) and his minor role in the offenses under

6

§ 3B1.2(b). The court overruled the objections. Molina-Alfonso then requested that the court apply a variance based on the sentencing factors in 18 U.S.C. § 3553(a), but he conceded that the statutory mandatory minimum sentence did not permit the court to sentence him below 60 months. The court denied the variance, agreeing that it lacked the authority to sentence below the mandatory minimum and further found that a variance was not warranted. After considering the § 3553(a) factors, the court sentenced Molina-Alfonso to 60 months' imprisonment. Molina-Alfonso now appeals.

II. Standards of Review

"We review de novo a denial of a motion for judgment of acquittal based on the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1185 (11th Cir. 2009), *cert. denied*, 2010 WL 333757 (Mar. 1, 2010) (quotation marks omitted). We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). Generally, constitutional claims are reviewed *de novo*. *United States v. Williams*, 527 F.3d 1235, 1239 (11th Cir. 2008). Likewise, we review the decision not to grant a mistrial for abuse of discretion. *United States v. Emmanuel*, 565 F.3d 1324,

7

1334 (11th Cir. 2009).

III. Discussion

A. Sufficiency of the Evidence

"[T]he elements of the offense of conspiracy under 21 U.S.C. § 846 are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). The government must prove that the defendant knew of the conspiracy and voluntarily participated in it. *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002). The government may prove a conspiracy by circumstantial evidence. *Toler*, 144 F.3d at 1426; *see also United States v. Pineiro*, 389 F.3d 1359, 1368 (11th Cir. 2004). "Although mere association with conspirators and mere presence at the scene of a crime do not in themselves establish participation in a criminal conspiracy, a jury may properly consider both in conjunction with one another and with other facts to infer knowing and intentional participation." *United States v. Brantley*, 68 F.3d 1283, 1288 n.4 (11th Cir. 1995).

To show that Molina-Alfonso violated 21 U.S.C. § 841(a)(1), the government must prove he knowingly and intentionally possessed with the intent to distribute marijuana plants, all of which can be shown by direct or circumstantial

8

evidence. *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989).

Knowledge can be shown by the surrounding circumstances. *Id.* at 1392.

"Constructive possession is sufficient for the possession element, and can be

established by showing ownership or dominion and control over the drugs or over

the premises on which the drugs are concealed." *Id.*

Here, the evidence was sufficient to establish Molina-Alfonso's guilt of

conspiracy and possession. Contrary to Molina-Alfonso's argument, the

government proved his involvement with more than his mere presence. The

testimony at trial established that he was renting the Ballard Road house and the

1207 NW 21st Avenue house. Marijuana and materials for a grow house were

found in each house. The van Molina-Alfonso admitted was his contained

marijuana leaves, some of which were old and dried, indicating that the van had

been used to transport marijuana in the past. Molina-Alfonso admitted the

possession of the drugs found at Ballard Road, and the quantity found was

inconsistent with personal use. Moreover, after Molina-Alfonso was arrested, he

advised Alain Alfonso to claim the drugs found in the house were for his personal

use.

This evidence, when viewed together, was sufficient for the jury to find an

agreement to grow marijuana plants and that Molina-Alfonso was a part of the

agreement. It also established Molina-Alfonso's possession of marijuana.

Additionally, the testimony at trial showed that police found 56 root systems in one room and another 51 baby plants in another. This sufficiently establishes the 100 plants for which Molina-Alfonso was convicted. Accordingly, Molina-Alfonso's sufficiency claim fails.

### B. Evidentiary Issues[4]

Molina-Alfonso argues that the district court admitted irrelevant and prejudicial evidence over his objections. He contends the errors, independently and cumulatively, require reversal of his convictions. He asserts that the admission of hearsay evidence violated his right to confront and cross-examine witnesses under the Sixth Amendment. He further challenges the admission of the transcript of the conversation in the police car on the ground that the translator did not type the transcript. He also challenges the translator's qualifications.

A district court "has broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action

---

[4] We agree with the government that Molina-Alfonso failed to properly brief all of his claims. For many of his evidentiary challenges, he merely lists his objection and recites the district court's ruling, but does not offer any argument. Thus, we conclude that these issues are abandoned. *United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006).

more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "All relevant evidence is admissible, except as otherwise provided. . . . Evidence which is not relevant is not admissible." Fed.R.Evid. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

We will not reverse evidentiary errors unless "there is a reasonable likelihood that they affected the defendant's substantial rights." *United States v. Frank*, 2010 WL 890451, *15 (11th Cir. Mar. 15, 2010) (citation omitted).

Although Molina-Alfonso asserts error with respect to many evidentiary decisions, we will address only those issues that were properly briefed.

### 1. Labelle's testimony

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. District courts have broad discretion to admit probative evidence, but their discretion to exclude evidence under Rule 403 is limited. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990). "[T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding

11

matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983).

Here, Labelle testified that he investigated the house on Highlands Boulevard and observed what appeared to be an abandoned grow house. The government admitted evidence that the house belonged to Julio Espinosa. We agree with the district court that the evidence was relevant to establish that the conspiracy involved multiple grow houses and that the Highlands Boulevard and Ballard Road houses were both connected to the conspiracy. *See United States v. Jiminez*, 564 F.3d 1280, 1289 (11th Cir. 2009).

### 2. Consent-to-search form

Molina-Alfonso objected to the admission of the forms as hearsay and as a Sixth Amendment Confrontation Clause[5] violation because the co-conspirators who signed the forms did not testify and he was not able to cross examine them. The forms were admitted during Delgado's testimony and Molina-Alfonso had the opportunity to cross-examine Delgado about the forms.

We conclude Molina-Alfonso's argument lacks merit. First, the consent

---

[5] The Confrontation Clause bars the admission of the testimonial statements of a witness who did not appear at trial unless the witness was unavailable and the defendant had a prior opportunity to cross-examine him or her. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

form signed by Molina-Alfonso is not hearsay because it is an admission by a party-opponent. *See* Fed. R. Evid. 801(a), (d)(1). Moreover, Rivero's consent form would not constitute hearsay because it was not offered to prove that Rivero gave consent. Instead, the consent forms put the officers' decision to search the property and cars in context. *See United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009) ("this Circuit has long recognized that statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement."). Because these statements were not hearsay, there was no Confrontation Clause violation. *Id.* at 1288 ("There can be no doubt that the Confrontation Clause prohibits only statements that constitute impermissible hearsay." (citing *Crawford*, 541 U.S. 36, 59 n 9)).

Even if the court erred by admitting the forms containing Rivero's signature, the error was harmless. *See Caraballo*, 595 F.3d at 1229. The admission of the forms was not harmful to the defense, as the consent forms were unlikely to make the jury believe Molina-Alfonso was guilty.

### 3. Transcript

A jury may use transcripts as an aid to understanding the content and meaning of tape recordings. *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985). If the parties are unable to produce a stipulated transcript, "each side should produce its own version of a transcript or its own version of the disputed portions." *United States v. Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993). Each party may also "put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version." *Id.*

Molina-Alfonso's challenge to the transcript is without merit. First, for the transcripts to be admissible, all that was required was testimony that the transcript was accurate, and this could be accomplished by testimony from the person who prepared the transcript or someone who heard the tape. *United States v. Rochon*, 563 F.2d 1246, 1251-52 (5th Cir. 1977);[6] *see also United States v. Green*, 40 F.3d 1167, 1173 (11th Cir. 1994). Here, Sanchez testified to the accuracy of the transcript and this testimony was sufficient to render the transcript admissible. *See United States v. Myers,* 972 F.2d 1566, 1577 (11th Cir. 1992) (permitting testimony of lay witness if based on personal experience and observation). At no

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

time did Molina-Alfonso challenge the accuracy of the transcript or seek to admit his own transcription. Under these circumstances, there is no error. *See Hogan*, 986 F.2d at 1376 (concluding that defendant's claim of error must fail when he does not offer his own transcript and does not point out inaccuracies in the government's transcript).

To the extent that Molina-Alfonso objected to Sanchez's testimony because she was not a certified translator, we are not persuaded. Molina-Alfonso did not submit his own translation and did not identify any portion of the translation that was inaccurate. *See United States v. Frank*, 2010 WL 890451, *15 (11th Cir. Mar. 15, 2010). Moreover, Molina-Alfonso had the opportunity to cross-examine Sanchez and raise her qualifications as an issue of credibility for the jury.

### C. Mistrial

To receive a mistrial, a defendant "must show that his substantial rights are prejudicially affected." *Emmanuel*, 565 F.3d at 1334 (quotation marks omitted). "The decision of whether to grant a mistrial lies within the sound discretion of a trial judge as he or she is in the best position to evaluate the prejudicial effect of improper testimony." *United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994). "[W]hen the record contains sufficient independent evidence of guilt, any error was harmless." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).

15

Because the district court committed no single evidentiary error, there is no cumulative error, and the court did not abuse its discretion in denying the motion for a mistrial. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (concluding that cumulative error doctrine is inapplicable where district court commits no individual errors). Moreover, Molina-Alfonso has offered nothing to show that he suffered prejudice. The government's case against Molina-Alfonso was strong, especially in light of his admission to possession of the marijuana, the other marijuana found in the van Molina-Alfonso admitted driving, and Molina-Alfonso's own statements recorded in the patrol car.

D. Sentencing

Molina-Alfonso argues that the court erred in determining his sentence because he was entitled to a reduction for his minor role in the offense and his acceptance of responsibility.

Molina-Alfonso's conspiracy conviction carried a mandatory minimum sentence. Because the district court correctly imposed the statutory mandatory minimum sentence, any error in the guidelines calculations is harmless. *United States v. Raad*, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005).

IV. Conclusion

For the foregoing reasons, Molina-Alfonso's convictions and sentences are

AFFIRMED.