[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16515

_____

D.C. Docket No. 6:11-cr-00302-CEH-TBS-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES TIPTON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 16, 2014)

Before CARNES, Chief Judge, DUBINA, and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit Court of Appeals sitting by designation.

Appellant James Tipton appeals his conviction and sentence for conspiring to distribute and to possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm Tipton's conviction and his 168-month sentence.

## I. BACKGROUND

Michael Snow lived in Kentucky and worked with Robbie Adams, who was an oxycodone broker for Juanita Hall. Adams introduced Snow to Hall. After this introduction, for approximately ten months, Snow regularly supplied Hall with up to 3,000-pill quantities of oxycodone. Snow moved to Florida. Hall was unable to obtain the 30-milligram oxycodone pills in Kentucky, so she suggested that she would purchase oxycodone directly from Snow. Hall continued to call Snow to purchase more oxycodone pills even after Snow's arrest on drug charges in Florida.

After being convicted of unrelated state drug offenses, Snow became a confidential informant ("CI") with the Drug Enforcement Administration ("DEA"). Snow signed a cooperation agreement with the DEA and identified Hall as a drug dealer. Subsequently, Snow and Hall communicated via telephone and text messages to negotiate a deal for 2,000, 30-milligram oxycodone pills at the price of $15 per pill. Hall chose not to travel to Florida to secure the oxycodone pills

2

because her daughter was ill.  She told Snow that Harold Durham (Tipton's former father-in-law) and Tipton (whom Hall called "Jay") would contact him to arrange a meeting for the transfer of the pills.  Thereafter, Tipton, Durham, and Danny Winburn, the driver, traveled to Florida from Kentucky with the money to purchase the oxycodone.  They also took fishing equipment with them to disguise the real nature of their trip.

After several telephone calls between Snow and Tipton, the men eventually arrived at a hotel to meet with the oxycodone source, who was undercover agent Paul Roque.  The police arrested the men and searched Tipton's van, uncovering two boxes containing a total of $29,030.10 in cash.  The currency was separated into $1,000 bundles and bound with rubber bands, which police acknowledge is a common way for drug dealers to transport cash.

Tipton proceeded to trial, and a jury found him guilty of conspiracy to distribute and to possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846.  At the sentencing hearing, the government indicated that Tipton qualified as a career offender, and because of this, Tipton had an enhanced total offense level of 34 and a criminal history category of VI.  This resulted in an advisory sentencing guideline range of 262 to 327 months' imprisonment.  The district court denied Tipton's motion for a downward departure but determined that, given the evidence of Tipton's cognitive disorder and passive/dependent

3

personality, a below-guideline-range sentence of 168 months would be reasonable.

Tipton timely perfected this appeal.

## II.  ISSUES

(1)    Whether the district court erred by denying Tipton's motions for judgment of acquittal.

(2)    Whether the district court abused its discretion by denying Tipton's motions for new trial and dismissal of the indictment.

(3)    Whether Tipton's below-guidelines sentence is procedurally or substantively unreasonable.

## III.  STANDARDS OF REVIEW

Because Tipton moved for a judgment of acquittal at the end of the government's case and after presentation of all of the evidence, we review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in the government's favor.  *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990).

This court reviews for abuse of discretion the district court's rulings on motions for a new trial.  *United States v. Thompson*, 422 F.3d 1285, 1294-95 (11th Cir. 2005).  Because Tipton did not object to some of the district court's rulings until he filed his motion for new trial, we review those rulings for plain error only. *United States v. Baker*, 432 F.3d 1189, 1202–03 (11th Cir. 2005) ("Under the plain error standard, before an appellate court can correct an error not raised at trial,

4

there must be (1) error, (2) that is plain, and (3) that affects substantial rights." (internal quotation marks and citation omitted)).

This court reviews a sentence for reasonableness, *United States v. Winingear*, 422 F.3d 1241, 1244-45 (11th Cir. 2005), "under a deferential abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).

## IV.  ANALYSIS

### A.  Sufficiency of the Evidence

To prove a violation of 21 U.S.C. § 846, the government had to establish that two or more persons agreed to violate the narcotics laws and that Tipton knowingly participated in that agreement.  *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994).  A jury may infer participation in a conspiracy from the defendant's concert of action with others.  *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997).  Although mere association with conspirators and presence at the scene of a crime do not in themselves establish participation in a criminal conspiracy, a jury may properly consider both in conjunction with one another and with other facts to infer knowing and intentional participation in the conspiracy.  *United States v. Brantley*, 68 F.3d 1283, 1288 n. 4 (11th Cir. 1995).  *See also United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir. 1985) ("A jury may find knowledgeable, voluntary participation from

5

presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present.").

Here, the record evidence demonstrates that, based upon her prior association with Snow, Hall had brokered a deal to supply Durham and Tipton with approximately 2,000, 30-milligram oxycodone pills for $32,000. To facilitate the deal, Hall had provided Snow with Durham's cell phone number, and to ensure that Snow would feel comfortable consummating the deal in her absence, Hall told Snow that she had met Tipton during a prior drug deal. During the men's drive to Florida, Snow had asked Tipton whether "you guys" were still going to Florida, and Tipton responded that they were. Also during the drive, Durham told Snow that "if we can get the right kind of deal going, we'll pick up all you can get." Hall also stated to Snow that Hall had been in contact with Durham and Tipton after their arrival in Florida to secure arrangements for a meeting place. Once the men arrived at the hotel, Snow entered the van, discussed the particulars of the deal, and confirmed that the defendants had the buy money. During Snow's conversation with the men, Durham stated that "we've got the money stuffed up under the van in boxes." Snow observed during the meeting that Tipton expressed neither surprise that a drug deal was underway nor any misgivings about the deal going forward. When they searched the van, the authorities found money inside.

Although the government's evidence did not include statements from Tipton or his co-defendants directly implicating Tipton in the drug deal, the jury was entitled to find from the evidence presented that Tipton, Durham's former son-in-law, was fully apprised of the particulars regarding the drug deal. *See Cruz-Valdez*, 773 F.2d at 1546. Moreover, the government proved at trial that Tipton previously had been convicted of conspiracy to distribute marijuana and a controlled substance, which is relevant to show his intent to enter into this conspiracy as well. *See United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990) ("Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." (quoting *United States v. Hitsman*, 604 F.2d 443, 448 (5th Cir. 1979)).

Tipton's challenge to the sufficiency of the evidence includes an argument that, because Hall was a CI who allegedly had acted to thwart the purported conspiracy, the district court erred by admitting her statements as a co-conspirator under Federal Rule of Evidence ("Rule") 801(d)(2)(E). The district court conducted a pretrial *James*[1] hearing to determine whether Hall's statements qualified for admission pursuant to Rule 801(d)(2)(E). In our view, the district court did not abuse its discretion by admitting Hall's statements because the government established the prerequisites for their admission under Rule

---

[1] *See United States v. James*, 590 F.2d 575, 579–80 (5th Cir. 1975) (en banc) (holding that judge alone should determine admissibility of co-conspirator's declarations).

7

801(d)(2)(E).  Because we conclude from the record that sufficient evidence established that Tipton knowingly participated in the conspiracy to possess and distribute oxycodone, we hold that the district court did not err by denying Tipton's motions for judgment of acquittal.

## B.  Motions For New Trial and Dismissal and Evidentiary Rulings

The district court did not abuse its discretion by denying Tipton's motion for a new trial.  At the *James* hearing, the government presented evidence to support the district court's finding that Hall had not been an informant and supported the district court's admission of her statements as co-conspirator statements under Rule 801(d)(2)(E).  While it is true that Hall gave inconsistent statements to direct questioning regarding whether she had worked as an informant, the jury, as the sole arbiter of credibility, determined that she was not an informant, thus implicitly rejecting Tipton's assertion to the contrary.  That is the prerogative of the jury.  *See Calderon,* 127 F.3d at 1325 (determination concerning witnesses' credibility is jury's exclusive province).  Thus, there was sufficient evidence for a reasonable jury to conclude that Hall had been a co-conspirator, along with Tipton, Durham, and Winburn, and not an informant.  Assuming arguendo that Hall had been an informant, we would not reverse Tipton's conspiracy conviction because Tipton's prior association with Hall and his travel to Florida with Durham and Winburn,

8

despite his physical discomfort due to a boil on his body, was sufficient to establish that Tipton knowingly participated in the conspiracy.

Tipton next argues that, at trial, the district court should have excluded Hall's statements about the conspiracy to Snow because they were "testimonial" statements within the meaning of the Sixth Amendment and therefore barred by *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). In *United States v. Underwood*, 446 F.3d 1340 (11th Cir. 2006), this court held that statements made to an undercover informant in the course of an investigation were non-testimonial because the statements "clearly were not made under circumstances which would have led [the declarant] reasonably to believe that his statement would be available for use at a later trial." *Id.* at 1346. Because Hall's statements to Snow, a CI, were non-testimonial and satisfied the requirements for admissibility of co-conspirator statements, we conclude the district court properly admitted them.[2]

While Tipton seeks to exclude Hall's inculpatory statements about the conspiracy, he contends that her equivocal statements about her work as a CI should have been admitted under either Rule 804 or Rule 807. Rule 804 allows for

---

[2] Tipton also contends that the district court erred in admitting Hall's statements about the conspiracy after it found that Hall was not credible. Rule 801(d)(2)(E) provides that a statement offered against an opposing party that was made by the party's co-conspirator during and in furtherance of the conspiracy is not hearsay. This rule does not require that the district court make a credibility determination before admitting the statement. That is for the jury to decide.

9

the admission of a hearsay statement against interest when it "is supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B). Similarly, under Rule 807, the hearsay statement may be admissible if it has "circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). However, the district court found that Hall was "completely unbelievable at this point," and Tipton does not point to anything that refutes this finding. Accordingly, the district court's exclusion of the statements under both rules was proper.

Relying on Rule 806, Tipton next argues that the district court improperly excluded Hall's statements that she had been an informant and that Tipton had not been involved in the drug conspiracy. Because Tipton did not rely on Rule 806 in the district court, we review this argument for plain error only. *See Baker*, 432 F.3d at 1202–03. The district court did not violate Rule 806 because it was not applicable. However, assuming the district court abused its discretion by excluding Hall's statements under Rule 806, Tipton has failed to show that the error affected his substantial rights such that he is entitled to relief. Tipton admits that the district court permitted him to elicit testimony that Hall had given inconsistent statements in response to the "direct question" about whether she had worked as an informant. The district court refused to admit Hall's equivocal statements about her work as a CI under Rules 804 or 807, determining that the

10

statements lacked sufficient indicia of trustworthiness for admissibility. The district court's exclusion of the evidence under either rule was not an abuse of discretion. *See United States v. Jayyousi*, 657 F.3d 1085, 1113–14 (11th Cir. 2011).

Tipton also alleges that the district court erred by denying his second motion for new trial and motion to dismiss the indictment. Not only is Tipton's motion for new trial untimely, we conclude it is meritless. We also conclude he has waived review of his motion to dismiss the indictment because he failed to provide any authority in support of his argument. *See Flanigan's Enters. Inc. of Georgia v. Fulton Cnty, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001).

Tipton proffers a serious allegation that the district court violated his Sixth Amendment right to compulsory process by failing to issue a bench warrant or an order to show cause for Hall to appear at Tipton's trial. Because Tipton failed to assert this argument in the district court, we review this contention for plain error only. *See United States v. Douglas*, 489 F.3d 1117, 1125 (11th Cir. 2007), abrogated on other grounds by *United States v. Whatley*, 719 F.3d 1206 (11th Cir. 2013). Tipton has failed to meet his burden under the plain error review standard. After the trial had begun, Tipton provided to the district court proof of service and a draft order to show cause. However, the district court never issued the order because Tipton's request for it was inadequate and untimely. That determination

11

was not an abuse of discretion.  Tipton's Sixth Amendment claim also lacks merit because the Sixth Amendment guarantees a criminal defendant compulsory process only for obtaining witnesses in his favor.  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446 (1982).  Here, Tipton fails to show that Hall's testimony was material and favorable because he cannot state with certainty what her testimony would have contained.

Tipton next argues that the district court erred by failing *sua sponte* to give a missing-witness jury instruction.  Because Tipton failed to request such an instruction, we review this claim for plain error only.  *See United States v. Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008).  Because Tipton has failed to demonstrate entitlement to a missing-witness instruction, the district court did not plainly err by failing to give the instruction.

Tipton argues that the district court erred by admitting evidence of his prior drug dealing because the evidence was relevant to his purported criminal propensity and was unduly prejudicial.  He is wrong.  Rule 404(b) prohibits the introduction of evidence of a defendant's other crimes, wrongs, or acts to prove the character of the defendant, and to show that he acted in conformity with that character when he engaged in the charged criminal conduct.  Such evidence may be admissible, however, for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

12

We conclude from the record that the district court conducted the proper balancing test and did not err in admitting the evidence of Tipton's prior drug dealing. Moreover, the district court gave a limiting instruction which mitigated the risk of any unfair prejudice. *See United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).

Tipton complains that the district court erred by admitting Snow's testimony that he had seen Tipton during a prior drug deal in Kentucky. To the extent that Tipton's argument is that this was evidence of a prior bad act which should have been excluded under Rule 404(b), the district court did not plainly err in admitting it. Snow's testimony regarding his prior contact with Tipton was intrinsic evidence of Tipton's participation in the charged conspiracy. *See Edouard*, 485 F.3d at 1344 ("[E]vidence of criminal activity other than the charged offense is *not* "extrinsic" under Rule 404(b), and thus falls outside the scope of the Rule when it is . . . necessary to complete the story of the crime or . . . inextricably intertwined with the evidence regarding the charged offense." (internal quotation marks and citation omitted)).

Tipton has waived his argument that the prosecutor attempted to bolster witnesses by vouching for their credibility. Tipton likewise has waived review of his argument that the district court erroneously denied his discovery motions.

Finally, because we conclude there was no error in any of the district court's evidentiary rulings, there can be no cumulative error.  In sum, we affirm the district court's dispositions on its rulings on motions and its evidentiary rulings.

## C.    <u>Sentence</u>

Tipton argues that his 168-month, below guidelines sentence is procedurally unreasonable because the district court erred in calculating his advisory sentencing range.  He also contends that his sentence is substantively unreasonable because the district court created an unwarranted disparity between his and his co-conspirators' sentences.  This court reviews a sentence for reasonableness. *Winingear*, 422 F.3d at 1244-45.  We do so under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. at 41, 128 S. Ct. at  591.  The party challenging the sentence bears the burden of proving unreasonableness.  *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

Based on our review of the record, we conclude that Tipton's sentence is procedurally and substantively reasonable.  The district court properly assessed Tipton's role in the offense and criminal history score, granted Tipton a downward variance based upon his mental deficiencies and troubled upbringing, and created no unwarranted disparities between Tipton and his co-defendants' sentences.  Accordingly, because we see no merit in any of the arguments Tipton makes in this appeal, we affirm his conviction and his 168-month sentence.

**AFFIRMED.**