[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10873
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cr-00029-LAG-CHW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAYMOND F. WILLIAMS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 17, 2020)

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Raymond Williams appeals his conviction, following a guilty plea, for conspiracy to bribe a public official, 18 U.S.C. §§ 371 & 2, and the district court's order of restitution. He contends: (1) the district court violated his plea agreement by accelerating the collection of restitution for his two companies, and the government breached his plea agreement by failing to object when the district court imposed the accelerated restitution order; (2) the government committed a Brady violation by failing to disclose evidence related to the acts of his co-conspirators; and (3) his trial counsel was ineffective by failing to investigate impeachment testimony and ask for a downward departure based on the national average sentence for bribery. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Williams was the owner, president, and CEO of U.S. Technology Corporation. Technology Corp. is the parent company of U.S. Technology Aerospace Engineering Corporation. Williams was the president of Engineering Corp. From 2004 through 2013, both companies sold goods and services to Robins Air Force Base.

Mark Cundiff, a Department of Defense employee who was stationed at the base, was responsible for soliciting bidders for new government contracts. As part

2

of his job duties, Cundiff would prepare performance work statements—documents that informed bidding companies of the base's needs on a particular contract and that described the requirements a bidding company had to satisfy in order to be eligible to win a contract. Williams and Cundiff had a professional and personal relationship. From 2004 through 2014, Williams asked Cundiff to assist him in winning government contracts. Cundiff agreed and prepared performance work statements so that the contract requirements could only be met by Technology Corp. products, which guaranteed that Technology Corp. would be the only contractor capable of winning the bid. Specifically, Cundiff required that the contractors use only Technology Corp. patented products. Cundiff also helped Williams win private government-related contracts. In 2011, for instance, two companies in a joint venture—Yulista Management Services, Inc., and Science and Engineering Services, Inc.—had a contract with the government to build aircraft work stands and needed subcontractors. Cundiff, using his position to influence the process, communicated to the joint venture the base's desire to use local subcontractors and recommended Engineering Corp. and another company. Based on Cundiff's influence, the joint venture awarded the subcontract to Engineering Corp. and another local company.

As a swap for helping Williams win these contracts, Cundiff received cash payments from Williams. The payoffs increased over the years. Sometimes the

payments were direct, and other times Williams used a second co-conspirator, John Reynolds, as an intermediary to pay Cundiff.  As a result of Cundiff's efforts, Williams, in total, was awarded at least $14,450,000 in government contracts.

In 2017, Williams, Technology Corp., and Engineering Corp. were charged with one count of conspiracy to bribe a public official and one count of conspiracy to launder the proceeds of unlawful activity.  Williams was also charged with eighty-three counts of bribery of a public official.  Williams pleaded guilty to one count of conspiracy to bribe a public official, Technology Corp. and Engineering Corp. pleaded guilty to one count of conspiracy to launder the proceeds of unlawful activity, and three separate plea agreements were signed.  In exchange, the government agreed to dismiss the remaining charges against the defendants.

Williams's plea agreement said that the district court was "not bound" by any sentence that Williams and the government may have agreed to recommend and the court's "sentencing discretion" was not otherwise "limit[ed]."  The agreement provided that the district court was free "to impose a sentence that [was] more severe or less severe than the advisory guideline range."  In addition to other fines, Williams, Technology Corp., and Engineering Corp. each agreed to pay $850,000 in restitution to the government.  Williams, as the owner of both companies, consented to be jointly and severally liable for the debt.  "To assist in the payment of the financial penalties," the agreement continued, Williams, Technology Corp., and

Engineering Corp. assigned to the government a thirty-percent interest in a 2015 promissory note between Technology Corp. and another company, and also agreed that the government would collect thirty-percent of the monthly income that the defendants received under the note until the debt had been "paid." However, this was not the sole means by which the government could seek payment: "The government [did] not waive other means available to collect the unpaid balance of fines or restitution."

The plea agreement included an appeal waiver, which provided that Williams waived "any right to appeal the imposition of sentence upon [him], including the right to appeal the amount of restitution imposed" so long as the sentence did not exceed the advisory guideline range or the statutory maximum. Williams also agreed to "waive[] any right to collaterally attack [his] conviction and sentence under [28 U.S.C. §] 2255, or to bring any other collateral attack, except that [Williams] retain[ed] the right to bring a claim of ineffective assistance of counsel."

The district court conducted a joint sentencing hearing for Williams, Technology Corp., and Engineering Corp. The court sentenced Williams to 60 months' imprisonment and ordered Williams, Technology Corp., and Engineering Corp. to pay restitution in the amount of $870,000 apiece that would be joint and several with each other. But as to the manner of payment of restitution for the corporate defendants, the district court departed from the terms of the plea

agreement.  For Technology Corp. and Engineering Corp., the district court ordered immediate monthly payments of the greater amount of $50,000 or fifty percent of the "gross monthly payments" on the 2015 promissory note.  According to the district court, both companies failed to provide the "additional documentation" requested by the probation office, so the modified payment schedule ensured that restitution would be made.  Williams appealed only his judgment.

Williams raises three issues on appeal.[1]  First, he argues that the district court violated his plea agreement by accelerating the collection of restitution for Technology Corp. and Engineering Corp., and that the government breached his plea agreement by failing to object when the district court imposed the accelerated restitution order.  Second, he contends that the government committed a Brady violation by failing to disclose evidence related to the acts of his co-conspirators Cundiff and Reynolds.  And third, he asserts that his trial counsel was ineffective by failing to investigate impeachment testimony and ask for a downward departure based on the national average sentence for bribery.

---

[1] In his initial brief, Williams raised several challenges to his sentence.  The government moved to dismiss the appeal based on the appeal waiver, which we granted in part, dismissing the portions of the appeal that dealt with sentencing issues while permitting the remaining issues to proceed that related to the enforceability of the plea agreement or the validity of the underlying guilty plea or that were not otherwise barred by the appeal waiver.

**STANDARD OF REVIEW**

As to the first two issues, because Williams raises them for the first time on appeal, we review for plain error.  See United States v. De La Garza, 516 F.3d 1266, 1269 (11th Cir. 2008) (reviewing for plain error whether the government breached a plea agreement when the defendant failed to raise the issue below); United States v. Schier, 438 F.3d 1104, 1106 n.1 (11th Cir. 2006) ("reviewing unpreserved Brady claim for plain error" (internal quotation marks omitted)).  Under plain error review, the defendant must show (1) an error, (2) that was plain, (3) which affected his substantial rights.  Puckett v. United States, 556 U.S. 129, 135 (2009).  Once those three prongs are met, and only then, may we exercise our discretion "to remedy the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (internal quotation marks omitted) (alteration adopted).

**DISCUSSION**

*Restitution*

Williams argues that the district court violated his plea agreement by accelerating the restitution payment schedule and that the government breached the plea agreement by failing to object to the district court's accelerated restitution order. We disagree.

The plea agreement provided that "[n]othing herein [shall] limit the sentencing discretion of the Court."  During the plea colloquy and after hearing the

terms of restitution that Williams and the government agreed to, the district court asked Williams if he understood "that the terms of the plea agreement[] are merely recommendations to the Court." Williams said that he did. Williams understood that the manner of restitution was a recommendation and that it was within the court's discretion to increase the rate that restitution will be paid from what was originally agreed to in the plea agreement. The restitution order did not violate the plea agreement.

As to whether the government violated the plea agreement, our first task is to outline the material promises, if any, the government made that motivated the defendant to plead guilty. United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir. 2004). The government, in exchange for the defendant's promise to plead guilty, is bound by those material promises. Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). After considering the material promises and "the defendant's reasonable understanding of the agreement when he entered the plea," we then determine whether the government violated the plea agreement. United States v. Thomas, 487 F.3d 1358, 1360 (11th Cir. 2007). "[W]e interpret the terms of the plea agreement based on objective standards." Id.

8

Here, the government did not breach the plea agreement. The plea agreement did not "limit[] the sentencing discretion of the [district court]" and it did not limit the government's "means" of collection. At the sentence hearing, although the government and Williams recommended a thirty-percent payment schedule for Technology Corp. and Engineering Corp., the district court found that a shift from the plea agreement was warranted "given the amount of money that [was to be] returned and how [it would be] returned and used." Williams objected, but the district court, noting that the probation office "made several requests for additional documentation," which Williams failed to produce, determined that a quicker restitution payment schedule for Technology Corp. and Engineering Corp. ensured that the restitution would be paid, and overruled Williams's objection. The government voiced no objection.

The plea agreement clearly indicated that the government would "recommend" that the restitution for Williams be in the amount of $870,000, and the government did recommend that amount. The agreement, though, did not bind the government to recommend a method for collecting restitution, so there was no material promise that the government breached.

### *Brady* Violation

For the first time on appeal, Williams contends that the government violated Brady. According to Williams, the government failed to disclose evidence showing

that: (1) the two other co-conspirators, Reynolds and Cundiff, planned to acquire a company that would receive "lucrative" government contracts and would be run by Cundiff once his employment with the government ended; (2) Reynolds had made payments to Cundiff five years before and two years during the joint venture contract; and (3) before the 2011 joint venture contract, Technology Corp., Science and Engineering Services, and Yulista Management Services had entered into a "blanket subcontract" that assured that Technology Corp. would be their "sole" provider for materials.  This evidence, Williams contends, would have proven that the conspiracy was "actually between Reynolds and Cundiff," that he was not "the ringleader," that he did not meet the "actual or intended benefit" element of his bribery charge as he did not stand to benefit from Reynolds's payments to Cundiff, and that he did not need to bribe Cundiff for Technology Corp. to be awarded the joint venture contract.[2]

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

---

[2] A defendant who pleads guilty waives many, but not all, non-jurisdictional defenses. United States v. Matthews, 168 F.3d 1234, 1242 (11th Cir.) (listing examples), amended on denial of reh'g sub nom. United States v. Moore, 181 F.3d 1205 (11th Cir. 1999).  In Matthews, we declined to decide "whether a guilty plea waives a defendant's claim under Brady, or—assuming that a Brady claim is not waived by a guilty plea—whether the Brady material must be known to the prosecution before the plea or merely before sentencing." Id.  Following Matthews, we need not do so today to resolve this appeal because Williams has not met his burden.

10

punishment, irrespective of the good faith or bad faith of the prosecution." To state a Brady violation, the defendant must prove that "(1) the government possessed evidence favorable to him [either because it was exculpatory, or because it was impeaching]; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1268 (11th Cir. 2005).

Favorable evidence is evidence that, "if disclosed and used effectively, . . . may make the difference between conviction and acquittal" and includes exculpatory evidence as well as impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682. Therefore, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, [will] not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109–110 (1976). While the non-disclosure of material impeachment evidence may constitute a Brady violation, the Supreme Court has explained that, in the context of a guilty plea, "the Constitution does not require the Government to disclose material impeachment

11

evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 633 (2002).

Williams has not stated a viable Brady claim. The first two allegedly suppressed pieces of evidence that Williams points to are best categorized as impeachment evidence. The nature and span of the Cundiff-Reynolds relationship has nothing to do with Williams's involvement in the conspiracy. Williams still made payments to Cundiff in exchange for Cundiff's influence over government contracts and Reynolds was, at times, the middleman between Williams and Cundiff. That was the conspiracy—Williams paid Cundiff, or paid Reynolds to pay Cundiff, to get the millions of dollars in government contracts—and the alleged evidence would not and did not exculpate Williams in his bribery conspiracy. Rather, had Williams gone to trial and Reynolds and Cundiff testified against him, given that Reynolds and Cundiff "cooperated with the [government] and received significantly lower sentences than . . . Williams," the alleged evidence would have undermined their credibility as two players who had dealings independent of Williams's participation. While this information may have been helpful to Williams, "the Constitution does not require the prosecutor to share all useful information with the defendant" prior to a guilty plea. Ruiz, 536 U.S. at 628.

As to the third allegedly suppressed piece of evidence, it is unclear how a preexisting subcontract between Technology Corp. and the joint venture affected the

improper nature of Williams's influence over that contract, and Williams does not provide an explanation. Williams admitted to bribing Cundiff before, during, and after the formation of the subcontract between Technology Corp. and the joint venture. Considering Williams's admissions, he has not shown a "reasonable probability" that the result of his plea would have been different if he had access to this evidence. See Bagley, 473 U.S. at 682.

*Ineffective Assistance of Counsel*

Finally, Williams argues that his trial counsel was ineffective for failing to (1) investigate certain fact witnesses who would have contradicted the testimony of a government witness, and (2) request a downward departure at the sentencing hearing because his sentence was much longer than the national average sentence of twenty-four months for bribery. Both arguments are unavailing.

To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).[3] Where the defendant challenges a guilty plea based on ineffective assistance, "the defendant must show that there is a reasonable probability that, but

---

[3] Williams asserted other claims of ineffective assistance of counsel for the first time in his reply brief. We deem these issues waived. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 683 (11th Cir. 2014) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." (internal quotation marks omitted)).

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

However, we do not ordinarily consider claims of ineffective assistance of counsel on direct appeal. United States v. Khoury, 901 F.2d 948, 969 (11th Cir. 1990), modified on other grounds, 910 F.2d 713 (11th Cir. 1990). Most ineffective-assistance-of-counsel claims, as the Supreme Court explained in Massaro v. United States, 538 U.S. 500, 504 (2003), should be "brought under [28 U.S.C. section] 2255" because "a defendant claiming ineffective counsel must show that counsel's actions were [deficient] and that the [deficiency in performance] was prejudicial," but "[t]he evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis." Id. at 504–05. As such, the best forum to develop the facts necessary to determine the adequacy of representation during a trial is in a section 2255 proceeding where the defendant "has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created." Id. at 505–06 (internal quotation marks omitted). Other than "rare instance[s] when the record is sufficiently developed, we will not address claims for ineffective assistance of

14

counsel on direct appeal." United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005).

The record is not sufficiently developed to consider Williams's claims. The facts supporting Williams's claims are only in his brief and not in the record—we don't know what counsel investigated before the plea or what strategy he used at the sentencing hearing—so there is no basis for us to review the claims on direct appeal. See, e.g., United States v. Puentes-Hurtado, 794 F.3d 1278, 1285 (11th Cir. 2015) ("Although the record contains some evidence concerning [counsel's] performance, it is not sufficiently developed to allow us to address the ineffective assistance of counsel claim."). Williams is free to assert his claims in a section 2255 motion.

**AFFIRMED.**